646 A.2d 1

Cynthia M. MALESKI, Insurance Commissioner of
the Commonwealth of Pennsylvania, by Her
Deputy, Ronald E. Chronister, Plaintiff

v.

CORPORATE LIFE INSURANCE COMPANY, Defendant.

Commonwealth Court of Pennsylvania.

Heard May 12, 1994.

Decided June 14, 1994.

Publication Ordered July 14, 1994.

Jerome J. Shestack, Zachary L. Grayson and Linda J. Wells for plaintiff.

Peter J. Tucci, Michael L. Browne, Denise Pallante and Richard A. Sprague for defendant.

James D. Golkow, Patrick J. O'Connor, Gerianne Hannibal and Douglas B. Lang for intervenor, Berry & Martin.

PELLEGRINI, Judge.

On February 18, 1994, this Court ordered that Corporate Life Insurance Company (Corporate Life) be liquidated pursuant to the Insurance Department Act (Act)[1] due to statutory insolvency. As part of our order of liquidation, we directed that all files, books and papers of Corporate Life be turned over to the Insurance Commissioner (Statutory Liquidator) in accordance with 40 P.S. § 221.20(c).[2]

Pursuant to that order, the Statutory Liquidator sought out all files pertaining to Corporate Life. The law firm of Berry & Martin, former legal counsel to Corporate Life turned over all Corporate Life files in its possession, but sealed nineteen

1. Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. § 221.14.

2. This Section provides:
 The liquidator shall be vested by operation of law with the title to all of the property, contracts, and rights of action and all of the books and records of the insurer ordered liquidated, wherever located, as of the date of the filing of the petition for liquidation. He may recover and reduce the same to possession. . . .

boxes of documents (Berry & Martin documents), asserting immunity under the attorney-client privilege on behalf of both Corporate Life and its former directors and officers, as well as the work-product doctrine on its own behalf. Similarly, twelve boxes of Corporate Life and related documents in the possession of the firm of Reed, Smith, Shaw & McClay (Reed, Smith) were sealed (Reed, Smith documents).

Berry & Martin sought a protective order regarding the contents of the sealed boxes through a motion for reconsideration of our February 18, 1994, order. At issue in that motion for reconsideration were three questions dealing with whether Berry & Martin could withhold documents relating to Corporate Life:

1) Whether the former managers of Corporate Life could claim Corporate Life's attorney-client privilege in any documents in those files;

2) Whether former directors and officers of Corporate Life could claim a privilege separate from that of the corporation in any documents in those files; and

3) Whether Berry & Martin could assert a proprietary work-product privilege in those files.

By order of March 9, 1994, we granted Berry & Martin's Petition for Reconsideration in part recognizing that former officers and directors of Corporate Life could potentially assert attorney-client privilege as to any communications they could prove were made in their individual, as opposed to corporate capacities, 163 Pa.Cmwlth. 36, 641 A.2d 1.

In order to determine whether individually privileged documents were contained in the files, we ordered that an inventory be taken of both the Berry & Martin and Reed, Smith documents to permit the former officers and directors of Corporate Life to identify those documents in which they wished to assert a personal attorney-client privilege. Berry & Martin filed an inventory of its documents identifying 491 in

which it asserted an individual privilege on behalf of former directors and officers of Corporate Life.[3] In addition, Frederic Richardson and Theodore Nering identified an additional 287 Berry & Martin documents they contend fall within their individual attorney-client privilege.[4] Reed, Smith also prepared an inventory log describing the documents in its possession. However, none of the former officers or directors of Corporate Life designated any of those documents as privileged. A hearing was scheduled for May 12, 1994, to permit

**3.** Berry & Martin has identified the following Bates Stamped documents as individually privileged:

185, 253, 371, 410, 751–753, 756, 758–762, 785–791, 796, 972, 974, 1003, 1041–1046, 1061, 1066, 1070, 1074–1076, 1079, 1214, 1215, 1224, 1246, 1250, 1255, 1302, 1306, 1321, 1324, 1325, 1327, 1328, 1335, 1336, 1341, 1342, 1351, 1352, 1378, 1380, 1381, 1389, 1459, 1463, 1466, 1484, 1494, 1504, 1508, 1536, 1571–1573, 1592, 1595–1598, 1600–1603, 1612, 1614–1617, 1623, 1625, 1639, 1645, 1648–1656, 1658–1664, 1667, 1686–1690, 1700–1703, 1705, 1736, 1749, 1767, 1768, 1770, 1772–1775, 1777, 1778, 1780–1796, 1800, 1802, 1804, 1809–1812, 1858, 1866, 1871, 1878, 1924, 1926–1928, 1947, 1978, 1982–1985, 2009, 2011, 2012, 2568, 2591, 2593–2600, 2875, 2950–2957, 2961, 2963, 2965, 2967, 2969,–2976, 2979–2995, 2997–3002, 3004–3008, 3011–3016, 3018–3020, 3129–3179, 3234, 3235, 3241–3248, 3250–3259, 3261–3267, 3290, 3292–3294, 3299, 3313, 3319, 3320, 3322–3325, 3328, 3329, 3341, 3357–3359, 3561–3563, 3598, 3838, 3863, 3866, 3876–3880, 3885–3896, 3970, 4035, 4036, 4185, 4269, 4280, 4360, 4379, 4394, 4452, 4469, 4474–4478, 4480, 4764, 4778, 4791–4793, 4887, 4890, 4932, 4936, 4959, 4960, 4963, 4975, 4991, 5032, 5033, 5035–5038, 5095, 5962.
(Berry & Martin Exhibits Nos. 1, 3).

**4.** In addition to the Berry & Martin documents identified as being subject to an individual privilege, Frederic Richardson and Theodore Nering also contend that the following Bates stamped documents are privileged:

56, 132, 139, 149, 177, 178, 182, 245, 459, 461–463, 465, 469, 472–474, 477–480, 499, 841, 852, 861, 867–871, 884–886, 1001, 1099, 1113–1115, 1118, 1119, 1121–1124, 1131, 1134, 1135, 1157, 1163, 1165, 1166, 1200–1257, 1303–1335, 1343, 1350, 1369, 1400, 1401, 1417, 1433, 1460–1514, 1588, 1595, 1596, 1613, 1646, 1665, 1666, 1673, 1694, 1722, 1726, 1752, 1753, 1764, 1885, 1893, 1904, 1906, 1940, 2005, 2006, 2022, 2023, 2284–2290, 2316, 2544, 2565–2567, 2570, 2573–2580, 2751, 2753, 2829, 2863, 2924, 2925, 2977, 3321, 3326, 3327, 3346–3348, 3585, 3587, 3657, 3770, 3660, 3661, 3663, 3666–3668, 3670–3673, 3770, 3967, 4736, 4792, 4798, 4803, 4855, 4858–4862, 4894, 4898–4904, 4990, 4991, 5010, 5013, 5031, 5034, 5040, 5131, 5147.
Petition of Richardson & Nering at 3.

those asserting a privilege to establish that documents identified fell within their privilege.

At the May 12, 1994, hearing, the only evidence offered in support of privilege was the deposition testimony of Frederic Richardson, a former officer of Corporate Life, and Kevin Berry, Esquire, a principle in Berry & Martin and its predecessors.[5] Despite notice, no other former officers or directors of Corporate Life appeared or offered testimony. The Statutory Liquidator offered the testimony of attorneys from Reed, Smith, who handled that firm's transactions with Corporate Life and its former officers and directors.

■ The test adopted in our March 9, 1994, opinion and order to evaluate whether a claim of personal privilege can be established is that set forth by the United States Court of Appeals for the Third Circuit in *In re: Bevill, Bresler & Schulman Asset Management*, 805 F.2d 120 (3d Cir.1986). In *Bevill*, the court recognized that if an officer or director approached outside corporate counsel as an individual, seeking individual representation, the attorney-client privilege attaches to those communications and may be asserted by the officer or director. *Id.* Relying on the language used in *In re: Grand Jury Investigation, No. 83–30557*, 575 F.Supp. 777 (N.D.Ga.1983), it held that in order to assert this privilege, the burden rests with the officers or directors to establish that the representation sought was in fact individual by showing:

· That they approached counsel for the purpose of seeking legal advice.

· That when they approached counsel, they made it clear that they were seeking legal advice in their individual rather than corporate capacities.

· That counsel saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise.

· That the conversations with counsel were confidential.

---

5. While also at issue was representation by Berry & Martin's predecessor firms, Bray, Berry & Martin and Elliot, Bray, Berry, Martin & Riordan, we will continue to refer to the representation as that of Berry & Martin.

· That the substance of their communications with counsel did not contain matters within the company or the general affairs of the company.

*Bevill* at 123. Having evaluated the evidence offered by the parties under the forgoing analysis, we have determined that the files of Berry & Martin may contain some documents either subject to a properly asserted individual privilege or outside the scope of our order of liquidation.

## I. Berry & Martin Documents

### A. Quadrennial Audit Representation of Individual Directors

 From the outset, Berry & Martin has asserted a personal privilege on behalf of Steven Calamia, Charles Lunden, David Smith and James Oas,[6] in accordance with what it perceived to be its ethical obligation under Rule 1.6 of the Pennsylvania Code of Professional Conduct. It was established through the testimony of Kevin Berry, that Berry & Martin had represented these four former directors and officers of Corporate Life individually in connection with the Department's quadrennial audit of Corporate Life. (Deposition of Kevin Berry at 30–76).

As a result of litigation arising out of the quadrennial audit of Corporate Life conducted by the Insurance Department, these four then-officers and directors of Corporate Life sought to be represented by Corporate Life counsel. The Insurance Department objected, contending that the four could not be represented by Corporate Life counsel. This Court, through Judge Colins, agreed, ruling that the four were entitled to individual representation in connection with the quadrennial audit due to the potential conflict between them and the corporation. (*Corporate Life Ins. Co., et al. v. Pennsylvania*

---

**6.** In accordance with our directive, each of these four former directors and officers of Corporate Life were notified by Berry & Martin of the May 12, 1994, hearing, and urged to attend so that they might present evidence in support of their assertion of any privilege they might hold. However, despite Berry & Martin's notice, none of these four appeared to offer evidence.

*Department of Insurance,* No. 82 M.D.1993, Memorandum opinion by Colins, J., filed April 30, 1993). These four individuals sought advice from Berry & Martin, which while having represented Corporate Life, was not representing it at the quadrennial audit.[7]

While we realize that none of the four appeared to assert a privilege with respect to this representation, because the outside representation was pursuant to judicial order requiring those officers to be represented as individuals, documents relating to that representation are not Corporate Life documents and are outside the scope of our order of liquidation. If these four former officers had gone to any other counsel seeking representation in connection with the quadrennial audit, this Court's order of liquidation would clearly not apply to those files. Just because the representation was sought from Berry & Martin by court order does not transform the documents generated by that representation into Corporate Life documents. Accordingly, we will not release any documents relating to representation of these four former officers in connection with the quadrennial audit.

### B. Emil Molin

Berry & Martin did not represent Emil Molin in connection with the quadrennial audit. On April 8, 1994, Mr. Molin intervened in these proceedings through his counsel, James F. Mundy, Esquire. Despite notice of the opportunity to do so, at no time did Mr. Molin or his counsel designate any documents as privileged. Mr. Molin refused to be deposed in connection with this proceeding. Mr. Molin was also notified of the May 12, 1994, hearing, as was his counsel, but chose not to attend and present testimony in support of any individual attorney-client privilege he might hold, nor did anyone acting on his behalf attend. Immediately prior to the hearing, Mr. Molin's counsel, in his only other communication to this Court, entered a notice of withdrawal.[8] This Court received no

---

7. We do not address whether this was the individual representation Judge Colins envisioned.

8. The status of Mr. Molin's representation is of no moment to our analysis due to his failure to appear at the May 12, 1994 hearing. On

further communications from either Mr. Molin or anyone on his behalf.

■ The purpose of the attorney-client privilege is to bene-fit the client, and accordingly, the client is the holder of the privilege. 8 Wigmore, Evidence § 232 (McNaughten rev. 1961). Accordingly, it has been held that if the holder of a privilege deliberately and knowingly fails to claim the privi-lege, either himself or through another, he waives it. *Steen v. First National Bank,* 298 F. 36 (8th Cir.1924). Counsel for Berry & Martin conceded that Berry & Martin had not been directed to assert any privilege on Mr. Molin's behalf. (N.T. May 12, 1994, at 9, 16–17). The only interpretation of Mr. Molin's knowing and conscious refusal to assert any privilege he may hold is that he intends to waive it.

Separate and apart from any waiver of privilege, even if Kevin Berry's testimony is used on Mr. Molin's behalf, it does not establish that Mr. Molin, specifically, sought out represen-tation on an individual basis under the *Bevill* analysis. (Depo-sition of Kevin Berry at 118). Accordingly, notwithstanding Mr. Molin's failure to establish the privileged nature of any of the documents at issue, his failure to even attempt to assert any privilege when he clearly had notice of these proceedings necessarily implies that he has waived any such privilege.

### C. Frederic Richardson

Frederic Richardson did appear at the hearing and offered testimony in support of his assertion of an individual attorney-client privilege arising out of communications he had made to Kevin Berry. Mr. Richardson testified that on several occa-sions he had sought out individual legal representation unre-lated to Corporate Life business from Kevin Berry and had made it clear that he was doing so in his individual capacity. (Deposition of Frederic Richardson at 65–82). Kevin Berry testified that on those occasions when Mr. Richardson ap-proached him on personal matters distinct from Corporate

June 10, 1994, Mr. Molin's counsel filed a petition seeking leave to withdraw from representation, asserting that his firm's representation of Mr. Molin was solely for the purposes of preserving any appeal rights Mr. Molin might have. This motion is still pending.

Life business, he understood the personal nature of the communications and saw fit to provide individual representation even though he recognized potential conflicts of interest. (Deposition of Kevin Berry at 76–91).

Under the *Bevill* test, this testimony is sufficient to convince us that there may be documents stemming from Berry & Martin's representation of Mr. Richardson in which Mr. Richardson holds an individual attorney-client privilege, or which may be outside the scope of our order of liquidation. We hold that such matters are unrelated to Corporate Life and subsequently are protected. Accordingly, any Berry & Martin documents relating to individual representation will not be disclosed to the Statutory Liquidator.

### D. Theodore Nering

While Theodore Nering did not appear at the hearing and did not testify himself, he did assert an individual attorney-client privilege as to designated Berry & Martin documents through counsel who was present. (N.T. May 12, 1994, at 8–9). Through counsel, and without objection, Mr. Nering offered the deposition testimony of Kevin Berry in support of his assertion. (N.T. May 12, 1994, at 11–12).

With respect to his representation of Mr. Nering, Kevin Berry testified that Mr. Nering had approached him seeking individual representation on various tax and transactional matters unrelated to Corporate Life. (Deposition of Kevin Berry at 91–96). He testified that as to certain of these individual matters raised by Mr. Nering which were unrelated to Corporate Life, he recognized a potential conflict of interest that could arise between his individual representation of Mr. Nering and his representation of Corporate Life. (Deposition of Kevin Berry at 97). Kevin Berry also testified that before undertaking individual representation of Mr. Nering, he informed him of these potential conflicts of interest. (Deposition of Kevin Berry at 99). Finally, he testified that documents relating to his individual representation of Mr. Nering were included in the Berry & Martin files now in possession of the Court. (Deposition of Kevin Berry at 93).

This testimony is sufficient to convince us that there may be documents stemming from Berry & Martin's representation of Mr. Nering in which Mr. Nering holds an individual attorney-client privilege under the *Bevill* analysis which we have adopted, or which may be outside the scope of our order of liquidation because they are not Corporate Life documents.

## II. Reed, Smith Documents

The only former officers or directors of Corporate Life to assert that they were represented individually by Reed, Smith and therefore hold individual attorney-client privilege as to the Reed, Smith documents were Frederic Richardson and Theodore Nering. However, neither Mr. Richardson nor Mr. Nering had previously designated any Reed, Smith documents as being privileged.

Mr. Nering did not offer any testimony concerning Reed, Smith documents. Mr. Richardson testified that he had been represented in an individual capacity by attorneys from Reed, Smith, but could only identify two attorneys he contended offered such representation, Gordon Richman and William Balaban. (Deposition of Frederic Richardson at 15, 54). He testified that upon his review of the inventory log submitted by Reed, Smith, he could only identify documents Bates stamped Nos. 457 and 477 as relating to this individual representation. (Deposition of Frederic Richardson at 52–54). He offered no other testimony supporting his contention.

The Statutory Liquidator offered the Deposition testimony of Michael Browne, managing partner of Reed, Smith, and Peter Tucci, a Reed, Smith attorney who had represented Corporate Life. Both testified that they had not represented any former officers or directors of Corporate Life on an individual basis, and to the best of their knowledge, no attorneys at Reed, Smith had ever represented former officers or directors of Corporate Life in their individual capacity.

Based upon Mr. Richardson's sparse testimony in support of his contention, his designation of only two documents as being privileged and our own review of the inventory log of Reed, Smith documents, we conclude that Mr. Richardson has failed

to carry his burden of demonstrating that he holds an individual attorney-client privilege in the Reed, Smith documents under the standards set forth in *Bevill.* An *in camera* inspection of all Reed, Smith documents to establish privilege is therefore not warranted. However, because the evidence does suggest that Reed, Smith documents Nos. 457 and 477 may be outside the scope of our order of liquidation, we will conduct an inspection of those two documents only. Should we determine that those two documents fall outside the scope of our order of liquidation, they will be returned to Reed, Smith.

Because there is no other testimony of record indicating that any other former officer or director of Corporate Life holds an individual attorney-client privilege in the Reed, Smith documents, the remainder of those documents will be turned over to the Statutory Liquidator upon final disposition of this matter.

An appropriate order will be entered.

## ORDER

AND NOW, this *14th* day of *June,* 1994, it is ORDERED that:

1. Counsel for the Statutory Liquidator shall, within 15 days of the entry of this order, devise a method of separating from the sealed files those documents designated as privileged and delivering them to this Court's Harrisburg chambers.

2. All documents not specifically designated as privileged shall be released to the Statutory Liquidator.

3. Following delivery of those documents designated as privileged to the Court, the Court shall inspect those documents and issue a final adjudication concerning their status.

4. The provisions of Paragraph 2 of this Order relating to release of documents not designated as privileged shall be stayed for a period of thirty (30) days.