The LAW OFFICE OF DOUGLAS T. HARRIS, ESQUIRE, and Douglas T. Harris, Esquire, Appellees

v.

PHILADELPHIA WATERFRONT PARTNERS, LP and Charles L. Kamps III and Scott A. Blow and Patrick T. Hanley and Todd Kamps, Appellants.

Philadelphia Waterfront Partners, LP and Philadelphia Waterfront Development, LLC, Charles L. Kamps III and Scott A. Blow and Patrick T. Hanley, Appellants

v.

Churchill Development Group, LLC, Churchill Residential Development LP, Churchill Commercial Development, LP, Joseph F. Logue, Jr. and Douglas T. Harris, Esquire, Appellees.

Superior Court of Pennsylvania.

Argued May 14, 2008.
Filed Sept. 22, 2008.

Henry E. Van Blunk, Newton, for appellants.

Carl G. Roberts, Philadelphia, for Logue and Churchill, appellees.

James R. Kahn, Philadelphia, for Law Office, appellee.

BEFORE: BOWES, GANTMAN and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 At 2872 EDA 2007, Philadelphia Waterfront Partners, LP (PWP), Charles L. Kamps III, Scott A. Blow, Patrick T. Hanley, and Todd Kamps appeal from the October 22, 2007, Order granting The Law Office of Douglas T. Harris, Esquire and Douglas T. Harris, Esquire's motion to compel and directing production of aforementioned appellants' Blow and Hanley's broken computers for discovery. At 2873 EDA 2007, PWP, Philadelphia Waterfront Development, LLC (PWD), Kamps III, Blow, and Hanley appeal from a companion Order, also dated October 22, 2007, granting Harris's motion to compel and also directing production of Blow and Hanley's broken computers. On December 10, 2007, we granted PWP, et al.'s application for consolidation.

¶ 2 In May of 2004, the corporate predecessor to PWP obtained an option to purchase approximately 60 acres of property along 7777 State Road in Philadelphia from a third-party for $8 million. Seven months later, in December of 2004, PWP's predecessor entered into a collateral agreement with a second third-party. Pursuant to the terms of the agreement, in exchange for the third-party agreeing to convey approximately 40 acres of land abutting 7777 State Road to them, PWP's predecessor agreed to convey to the third-party approximately 28 of the 60 acres of land subject to the option and roughly $1.7 million in cash. After obtaining financing, PWP, which had been assigned its predecessor's interests in February of 2005, began to prepare the land it ultimately planned to obtain along 7777 State Road for development.

¶ 3 In October of 2005, PWP hired appellee Harris as counsel. Harris immediately began searching for investors with the wherewithal to assist PWP in exercising its $8 million purchase option. Eventually, Harris introduced PWP to appellee Logue, who expressed an interest in providing financing. Beginning in December of 2005, PWP and appellee Churchill Development Group (CDG), a business entity controlled by Logue, began negotiating ways in which CDG could exercise PWP's $8 million option. When these negotiations fell through, the parties' amicable business relationship came to an abrupt end.

¶ 4 On April 10, 2007, appellants PWP, PWD, Kamps III, Blow, and Hanley filed a complaint seeking both monetary and equitable relief and raising claims for fraudulent conveyance, constructive trust, "dissipation of collateral," breach of fiduciary duty, civil conspiracy, and breach of contract. The complaint named CDG, Churchill Residential Development, LP, Churchill Commercial Development, LP—collectively referred to hereinafter as the "Churchill Entities"—Logue, and Harris as defendants. On June 21, 2007, appellee Harris, doing business as The Law Office of Douglas T. Harris, Esquire, filed his own complaint. The complaint raised claims for anticipatory breach of contract, equitable estoppel, and unjust enrichment against Kamps III, Blow and Hanley; a

claim for slander and libel *per se* against PWP, Kamps III, Blow, and Hanley; a second claim for slander *per se* against Kamps III; a claim for intentional infliction of emotional distress against Kamps III, Blow, Hanley, and Kamps; and, finally, a claim for civil conspiracy against PWP, Kamps III, Blow, Hanley, and Kamps.

¶ 5 At some point during the summer of 2007, Harris propounded a request for the production of documents on appellants. Rule 1925(a) Opinion, Bernstein, J., 12/14/07, at 1. On August 27, 2007, a consent Order was issued directing appellants "to provide full and complete verified answers to ... [Harris's] Request for Production of Documents within ten days." *Id.* In the Order, the trial court noted: "[Appellants] agreed to produce and were ordered to produce not later than September 6th *all e-mails and other documents* from the computers of [appellants] Scott Blow and Patrick Hanley." *Id.* (emphasis added).[1] The trial court further noted that appellants did not object to the production contemplated by this Order at any time. *Id.* at 1–2.

¶ 6 Appellants, nonetheless, failed to produce the e-mails and documents and at

some point during the summer of 2007, Harris filed a motion to compel. On October 22, 2007, the trial court held a hearing on Harris's motion during which the following exchange transpired:

The Court: Okay. Counsel, did you agree to an Order to produce things ten days after August 27th?

Appellants' Counsel: Your Honor, I believe [co-counsel] did.

The Court: Has it been complied with?

Counsel: I believe so, except for, as you said, the hardware, which were the two computers, the first of which became inoperable in November of '06 before any litigation in this matter; the second, just a few months ago. We have the hardware. We would produce it, but for the possibility that there is attorney/client privileged information on the hard drive.

The Court: Well, you can't figure that out, can you?

Counsel: There are technicians working on both the computers currently.

The Court: Well how does a computer break?

Counsel: I'm sorry?

---

**1.** Appellants contend Harris never demanded production of the computers themselves and that the possibility of such production was raised *"sua sponte"* by the trial court. *See e.g.,* Appellants' Supplemental Reply Brief to Appellee's Supplemental Brief in Support of Motion to Quash Appeal at 2872 EDA 2007, at 2. Appellants fail to recognize there is no meaningful distinction between producing "all e-mails and other documents" from a computer and producing the computer itself. *See* Rule 1925(a) Opinion at 1, *accord* Record, No. 9, Order. Moreover, appellants did not include any of the discovery documentation within the certified record or the supplemental record they filed in this Court on May 22, 2008. *Bennyhoff v. Pappert,* 790 A.2d 313, 318 (Pa.Super.2001), *appeal denied* 573 Pa. 682, 823 A.2d 143 (2003) ("It is the obligation

of the appellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal.") (internal and external citations omitted). While there are numerous discovery documents contained in appellants' reproduced record, we are uncertain as to whether the reproduced record represents a complete set of the various and relevant discovery documents filed. The trial court notes it had conducted "numerous discovery hearings," Rule 1925(a) Opinion at 2; these transcripts were also omitted from the certified record. We cannot remand this matter to the trial court for the preparation of a second supplemental record when we are not even certain as to how to delineate the scope of the remand.

The Court: How does a computer break?

Counsel: Your Honor, I'm not a computer expert. I couldn't tell you.

The Court: Well, did you ask the technician computer experts before you came into court to represent that it was broken?

Counsel: I know the second computer was a victim of a virus. I don't know how it was acquired.

The Court: Well, they have a right to the information, so how—what Order do you w[a]nt me to enter to enforce the Order that you agreed upon August 27th?

Counsel: Right. We can produce the computers.

The Court: You can?

Counsel: We can.

The Court: Okay. When do you want the computers, [Harris's counsel]?

Harris' Counsel: Within five days.

The Court: Within five days.

Appellants' Counsel: That's fine with me.

The Court: Motion is granted ... Plaintiffs are directed to produce all e-mails and other documents from the computers of plaintiffs Scott Blow and Patrick Hanley within ten days.

N.T., Motions Hearing, 10/22/07, at 12–14.

¶ 7 Subsequently, the Court entered the two Orders subject of this appeal and timely notices of appeal followed. On November 1, 2007, the trial court entered a Rule 1925(b) Order at each docket number directing appellants to file a concise statement of matters complained of on appeal. *See generally*, Pa.R.A.P.1925, **Opinion in Support of Order.** Appellants complied with the trial court's directives in timely fashion. On November 13, 2007, Harris filed motions to quash the appeals. We subsequently issued Orders denying the motions without prejudice to Harris's ability to raise the issue of our jurisdiction later in the proceedings; Harris does so in his appellate brief. On December 14, 2007, the trial court issued a Rule 1925(a) Opinion discussing its reasons for granting Harris's motions to compel.

¶ 8 Before addressing the merits of this appeal, we must first resolve the question of whether we have jurisdiction to do so. Appellees contend this consolidated appeal was inappropriately taken from two interlocutory and unappealable Orders. *See generally*, Pa.R.A.P. 341, **Final Orders; Generally,** (b) **Definition of final order.** Appellees further contend they offered appellants the opportunity to hire a third-party vendor to compile a list of documents contained in the computers so appellants could raise informed objections to any documents subject to the attorney-client privilege.

¶ 9 Appellants counter by invoking the collateral order doctrine. *See generally*, Pa.R.A.P. 313, **Collateral Orders,** (b) **Definition.** Appellants also reject appellees' proposal to hire a third-party vendor and, in doing so, note that allowing a third-party to view privileged information on the computers would result in waiver of the attorney-client privilege with respect to the documents viewed. *See e.g., Carbis Walker, LLP v. Hill, Barth & King, LLC,* 930 A.2d 573, 579 (Pa.Super.2007), *citing Bonds v. Bonds,* 455 Pa.Super. 610, 689 A.2d 275, 277 (1997).

¶ 10 This Court recently discussed the collateral order doctrine and its application to discovery orders compelling the production of documents:

In order for an interlocutory order to be deemed collateral, there must be an order collateral to the main cause of action; the right involved must be too important for review to be denied; and

the question presented must be such that if review is postponed until final judgment the claim will be irreparably lost. *Ben v. Schwartz,* 556 Pa. 475, 729 A.2d 547, 550 (1999), *citing* Pa.R.A.P. 313(b). A discovery order is collateral only when it is separate and distinct from the underlying cause of action. *Id.* at 551. In determining whether the right involved is too important to be denied review, it must be determined whether the right is deeply rooted in public policy such that it goes beyond the controversy at hand. *Id.* at 552. Finally, there must be no effective means of review available after an Order requiring the production of documents is reduced to judgment. *Id., citing Kelly v. Ford Motor Co.,* 110 F.3d 954, 964 (3d. Cir.1997).

*Feldman v. Ide,* 915 A.2d 1208, 1210–1211 (Pa.Super.2007). "This Court has previously considered the merits of an appeal from a discovery order requiring the production of documents where there is a 'colorable claim of attorney-client [ ] privilege [which] made appellate review proper' at this stage of the proceedings." *Carbis Walker, supra* at 577, *quoting Gocial v. Independence Blue Cross,* 827 A.2d 1216, 1220 (Pa.Super.2003).

¶ 11 Appellants make no attempt to apply the standard on which we rely in determining whether an order is collateral to the Orders at issue. Rather, they merely aver: "It is well-settled that preserving attorney-client privileged and attorney work-product privileged information are important rights justifying collateral appeals...." *See e.g.,* Appellants' Memorandum in Support of Appellants' Answer to Appellees' Motion to Quash Appeal at 2872 EDA 2007, at 7. Appellants do not point to any specific documents or other information contained on the computers as being subject to the attorney-client privilege.[2] The certified record gives no indication appellants ever attempted to file a motion seeking a protective order. *See generally,* Pa.R.C.P. 4012, **Protective Orders.** Moreover, there is no indication appellants filed a motion for reconsideration with the trial court, and to reiterate, appellants consented to not only the underlying Orders, but also to a precursor Order that directed production of all e-mails and other documents contained on the broken computers.

¶ 12 Despite these glaring deficiencies, we still are amenable to considering

---

2. Appellants, who were successful in obtaining a *supersedeas* from this Court by Order dated November 16, 2007, allege that, in conformity with this Order, they produced "any discoverable, non-privileged information from their computers" in timely fashion. Appellants' brief at 13, n. 2. They also allege they forwarded a privilege log to the trial judge for *in camera* review. Appellants, however, felt it unnecessary to include any evidence that these steps were taken within the certified record, the supplemental certified record or, for that matter, the reproduced record. *See e.g., Keystone Tech. Group, Inc. v. Kerr Group, Inc.,* 824 A.2d 1223, 1228 n. 6 (Pa.Super.2003) ("It is axiomatic that an appellate court is limited to considering only those facts which have been duly certified in the record on appeal and, for purposes of appellate review, what is not of record does not exist."), *citing Spink v. Spink,* 422 Pa.Super. 126, 619 A.2d 277, 280 n. 1 (1992).

The dissent concludes this appeal is moot because "both parties have informed this panel that the underlying issue was resolved" by agreement. Harris' motion to quash, which the dissent cites for support, avers that the appellees did not respond to an offer to create a privilege log made after the Orders *sub judice* were entered. In short, there is no agreement and, even if there were, an issue does not become "moot" simply because an interested party baldly avers that he complied with a motions panel directive any more than the alleged and belated production of a Rule 1925(b) statement moots the issue of waiver.

whether the merits of the underlying appeal present a "colorable claim" of attorney-client privilege given the unsettled question implicated by Harris's motions to quash. Appellees point out, as does the trial court, appellants' counsel failed to object to production of the ·computers. N.T., Motions Hearing, 10/22/07, at 13–14 ("We can produce the computers . . . That's fine with me."). As a general proposition, in order to preserve a claim of error for appellate review, the party must make a specific objection to the alleged error before the trial court in a timely fashion and at the appropriate stage of the proceedings. *Kaufman v. Campos*, 827 A.2d 1209, 1212 (Pa.Super.2003), *appeal denied* 576 Pa. 713, 839 A.2d 352 (2003), *citing Brown v. Philadelphia Tribune Co.*, 447 Pa.Super. 52, 668 A.2d 159, 162 (1995), *appeal denied* 544 Pa. 621, 675 A.2d 1241 (1996), *writ of certiorari denied* 519 U.S. 864, 117 S.Ct. 173, 136 L.Ed.2d 114 (1996). Failure to raise such an objection results in waiver of the underlying issue. *Id.*, *accord* Pa.R.A.P. 302, **Requisites for Reviewable Issue,** (a) **General rule** ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). A waived claim, which is innately without merit, cannot be considered a "colorable claim" of attorney-client privilege for purposes of determining whether an Order(s) is collateral.

¶ 13 Appellants, recognizing they have a significant problem with Rule 302(a) waiver, raise numerous arguments in an attempt to defeat its application. Initially, appellants argue they did not explicitly authorize counsel to waive the attorney-client privilege. Moreover, they contend that pursuant to 42 Pa.C.S.A. § 5928, **Confidential communications to attorney,** "counsel is never competent to waive the attorney-client privilege, as the privilege belongs to the client, *and not the attorney . . . .*" *See e.g.*, Appellants' Supplemental Reply Brief to Appellee's Supplemental Brief in Support of Motion to Quash Appeal at 2872 EDA 2007, at 6 (emphasis in original). For all intents and purposes, appellants posit that Rule 302(a) is inapplicable to situations where an attorney, without explicit authorization, waives the attorney-client privilege by failing to invoke and/or assert the privilege on a client's behalf before the trial court.

¶ 14 Section 5928 provides: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial *by the client.*" (Emphasis added.) The question as to whether Rule 302(a) waiver can be applied to situations where an attorney, without explicit authorization, fails to invoke and/or assert the attorney-client privilege on a client's behalf before the trial court is not settled in this Commonwealth.[3]

¶ 15 The Official Comment to section 5928 states the provision is: "Substantially a reenactment of act of May 23, 1887 (P.L. 158) (No. 89), § 5(d) (28 P.S. § 321)." Former title 28 of the Pennsylvania Statutes, section 321, the precursor to section 5928, provided as follows: "Nor shall coun-

---

**3.** *See Carbis Walker, supra* at 584 n. 11 (concluding an attorney waived the attorney-client privilege for his client by inadvertently disclosing a confidential document, but noting: "[Appellant] does not contend that, under Pennsylvania law, there can be no waiver of the privilege by counsel."); *Birth Center v. St. Paul Companies Inc.*, 727 A.2d 1144, 1164 (Pa.Super.1999), *affirmed on other grounds* 567 Pa. 386, 787 A.2d 376 (2001) (concluding appellant waived the attorney-client privilege through it's counsel's failure to object but giving no indication appellant argued implicit waiver through counsel's failings was not possible under Rule 302(a)); *see also e.g.*, appellants' brief at 18–19.

sel be competent or permitted to testify to confidential communications made to him by his client or the client be compelled to disclose the same, unless in either case this privilege be waived upon the trial by the client." In substantive terms, the language of former section 321 is identical to the language of section 5928.

¶ 16 Former section 321 was consistently interpreted as "a restatement of the principle of attorney-client privilege as it existed at common law." *Cohen v. Jenkintown Cab Co.,* 238 Pa.Super. 456, 357 A.2d 689, 692 n. 2 (1976), *appeal denied* April 30, 1976. ("Hence, [former section 321] has been treated as a restatement of the principle of attorney-client privilege as it existed at common law."). Section 5928, which is identical in substantive content to former section 321 has also been interpreted as a restatement of the common law attorney-client privilege. *Lane v. Hartford Accident & Indemnity Co.,* 5 Pa. D. & C.4th 32, 38 (1990) ("[Section 5928] is essentially a codification of the Pennsylvania common law of attorney-client privilege.") (citations omitted); *see also Carbis Walker, supra* at 578 ("Courts in this Commonwealth have recognized that 'the roots of the attorney-client privilege are firmly entrenched in our common law ....'"); *cf. Commonwealth v. Chmiel,* 558 Pa. 478, 738 A.2d 406, 414 (1999), *writ of certiorari denied* 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000) (applying the criminal law attorney-client privilege codified in 42 Pa.C.S.A. § 5916, **Confidential communications to attorney,** which is worded in a manner substantially similar to section 5928, and

noting: "Although now embodied in statute, the attorney-client privilege is deeply rooted in the common law.") (Additional citations omitted.)

¶ 17 At common law, it was generally recognized that the attorney-client privilege belongs to the client, not the attorney. 8 Wigmore, **Evidence,** § 2327 (McNaughton rev.1961). Yet, also implicit in the common law is the irrefutable notion that an attorney acts as his client's authorized agent. *See Carbis Walker, supra* at 584 ("[W]hile the attorney-client privilege belongs to the client, the attorney, acting as the client's agent, may be sufficiently negligent in producing the privilege that it may be waived ...."), *citing Fid. Deposit Co. v. McCulloch,* 168 F.R.D. 516, 523 (E.D.Pa.1996), *accord id.* at n. 11 ("[A] client who 'fails to claim the privilege, either himself or through another,' waives the privilege."), *citing Maleski by Chronister v. Corporate Life Ins. Co.,* 165 Pa. Cmwlth. 72, 646 A.2d 1, 4 (1994), *citing in turn* 8 Wigmore, **Evidence** § 232 (McNaughton rev.1961).[4] No reasonable person would vigorously contend in good faith that an attorney is unable to waive the attorney-client privilege on a client's behalf when explicitly authorized to do so. Accordingly, we cannot construe the phrase "unless in either case this privilege be waived upon the trial by the client" in a strictly colloquial sense—i.e., as requiring a client to personally, either orally or in writing, submit a waiver to a court of competent jurisdiction in order for the waiver to be deemed effective.[5]

4. Notably, Wigmore recognized the common law attorney-client privilege can be waived by "the executor, the administrator, the heir, the next of kin or the legatee" on a decedent's behalf and by a guardian on a ward's behalf. *See* 8 Wigmore, **Evidence** § 2329 (McNaughton rev.1961).

5. *See also* 8 Wigmore, **Evidence** § 2292 (McNaughton rev. 1961) ("It may here be noted that the privilege has in many jurisdictions been embodied in *statutes.* These have seldom helped to settle any mooted point, but on the other hand they have seldom chanced to disfigure the common law rule or to unsettle its logical development. Their original

¶ 18 The weight of authority provides that the proponent of a privilege carries the burden of, at the minimum, baldly invoking and/or asserting the privilege.[6] Even the cases on which appellants rely presuppose the party advocating for the privilege *actually invoked and/or asserted the privilege* before the lower court. Appellants' brief at 18–19, *citing McGovern v. Hosp. Serv. Ass'n of Northeastern Pennsylvania,* 785 A.2d 1012, 1018 (Pa.Super.2001) (concluding that the filing of an untimely objection before the trial court did not destroy the attorney-client privilege). Furthermore, the common law has, as far as we can discern, always counte-

nanced implicit waiver of the attorney-client privilege through the failings of counsel.[7] One prominent commentator discussed the theoretical flaw inherent in concluding implicit waiver cannot occur through counsel's failures as follows:

There is little theoretical justification for ignoring the negligent conduct of counsel relative to the preservation of the client's privilege claims. If the concern is with the perceived unfairness in holding the client responsible for the negligent actions of its agents, this would lead to the absurd result of precluding waiver in the corporate context because the corporate client, as a legal fiction,

wording was commonly ignored by the courts as being merely an attempt to name and to recognize the common law privilege.") (emphasis in original), *citing former* 28 P.S. § 321 (additional citations omitted).

**6.** 8 Wigmore, **Evidence** § 2322 (McNaughton rev. 1961) ("The claim of privilege being made, the *trial judge determines* whether the facts justify the allowance of the claim.") (emphasis in original), *citing People's Bank v. Brown,* 112 F. 652, 654 (3d Cir.1902) ("Therefore it is requisite that in every instance it shall be judicially determined whether the particular communication in question be really privileged, and, in order that such primary determination may be advisedly made, it is indispensable that the court shall be apprised, through preliminary inquiry, of the characterizing circumstances.") (additional citations omitted); Scott N. Stone, Robert K. Taylor, **Testimonial Privileges** § 1.61, at 1–161 (2d ed. 1993) ("The burden is always on the party asserting the privilege to demonstrate each of its essential elements."); *Nationwide Mut. Ins. Co. v. Fleming,* 924 A.2d 1259, 1265–1266 (Pa.Super.2007), *appeal granted* 594 Pa.311, 935 A.2d 1270 (2007) ("In case law from our Supreme Court and from this Court, a two-part inquiry has been used to resolve disputes over disclosure of communications for which attorney-client privilege has been asserted. The first part of the inquiry is whether attorney-client privilege does indeed apply to a particular communication.") (citations omitted); *Carbis Walker, supra* at 581 ("[T]he party who has asserted the attorney-client privilege must initially set forth facts

showing that the privilege has been properly invoked . . . .") (citation omitted); *Joe v. Prison Health Servs.,* 782 A.2d 24, 31 (Pa.Cmwlth. 2001) ("The party asserting the privilege has the initial burden to prove that it is properly invoked, and the party seeking to overcome the privilege has the burden to prove an application exception to the privilege."), *citing Joyner v. SEPTA,* 736 A.2d 35 (Pa.Cmwlth. 1999).

**7.** 8 Wigmore, **Evidence** § 2327 (McNaughton rev. 1961) ("What constitutes a waiver by implication? Judicial decision gives no clear answer to this question."), *accord* at § 2325 ("All involuntary disclosures . . . are not protected by the privilege, on the principle that . . . the law . . . leaves to the client and attorney to take measures of caution. . . ."); *Carbis Walker, supra* at 579 ("[T]he appellate courts of this jurisdiction have found waiver [of the attorney-client privilege] when the communication is made in the presence of or communicated to a third party or to the court . . ."), *quoting Bonds v. Bonds,* 455 Pa.Super. 610, 689 A.2d 275, 277 (1997); *Popovitch v. Kasperlik,* 70 F.Supp. 376, 381 (W.D.Pa.1947) (concluding the attorney-client privilege is waived when not raised during trial by objection); **Unif. Rule of Evidence** § 510, **Waiver of Privilege** (amended 2005), (b) **Involuntary Disclosure** ("A claim of privilege is not waived by a disclosure that was compelled erroneously *or made without an opportunity to claim the privilege.*") (Emphasis added).

can only act through its agents. To distinguish between attorney-agents and other types of agents is perverse because it holds the individual who knows the law and is charged with the responsibility of attending to the legal interest of the client to a lesser standard of conduct.

Paul R. Rice, **Attorney–Client Privilege in the United States**, § 9:73, at 9–261 (1993); *see also* n. 5, *supra.* Wigmore, in discussing the implicit waiver of the attorney-client privilege, noted as follows:

In deciding [what constitutes a waiver by implication], regard must be had to the double elements that are predicated in every waiver, i.e., not only the element of implied intention, but also the element of fairness and consistency. A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation. There is always also the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not.... He may elect to withhold or to disclose, but after a certain point his election must remain final.

8 Wigmore, **Evidence** § 2327 (McNaughton rev.1961).

■ ¶ 19 The phrase "fairness and consistency" is of significance to our analysis for two reasons. Allowing a litigant who fails to invoke and/or assert the attorney-client privilege before the trial court to then raise the privilege for the first time on appeal not only works an injustice to the court system itself, it also would provide litigants with a built-in mechanism for rigging the judicial process in hopes of wearing down the opposition. Moreover, waiver through counsel's failure to raise an issue before the trial court, either through explicit or implicit application of Rule 302(a) or through common law waiver, is applied to every conceivable issue—from those involving other forms of privilege to those of constitutional magnitude. *See e.g., Commonwealth v. Kauffman,* 413 Pa.Super. 527, 605 A.2d 1243, 1248 (1992) ("In the instant case, the Commonwealth did not assert either a common law governmental/executive privilege or an informer's privilege. Therefore, they were not considered by the trial court.... The failure to assert a privilege constitutes a waiver thereof."); *Kelley v. Mueller,* 590 Pa. 91, 912 A.2d 202, 203–204 (2006) *(per curiam)* (applying Rule 302(a) and reversing this Court's decision to analyze, *inter alia,* a constitutional challenge which had not been raised in the trial court); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272, 274 (1974) (adopting the waiver doctrine, as of yet to be codified in Rule 302(a), for criminal proceedings and refusing to review constitutional claims which were not raised before the trial court); *see also Commonwealth v. Freeman,* 573 Pa. 532, 827 A.2d 385, 402 (2003), *writ of certiorari denied* 543 U.S. 822, 125 S.Ct. 30, 160 L.Ed.2d 31 (2004) (abolishing relaxed application of the waiver doctrine in capital cases pursuant to Rule 302(a)).

■ ¶ 20 We find no support in the law for the notion that a client cannot implicitly waive the attorney-client privilege on appeal through his counsel's failure to raise the issue before the trial court. Based on the foregoing considerations, we hold, subject to our Supreme Court's inherent authority to carve out exceptions to the waiver doctrine, *see Freeman, supra* at 402, that, under Rule 302(a), a client implicitly waives the attorney-client privilege when his attorney fails to invoke and/or assert the privilege before the trial court, only to then raise the issue for the first time on appeal.

¶ 21 Appellants next contend the attorney who represented them at the October 22, 2007, motions hearing "had limited knowledge of the case-in-chief, was not present at any previous court appearances or hearings upon opposing counsel's discovery motions, and had never spoken directly with the individual Appellants Blow and Hanley." *See e.g.,* Appellants' Supplemental Reply Brief to Appellee's Supplemental Brief in Support of Motion to Quash Appeal at 2872 EDA 2007, at 2, n. 1. This all may very well be true, although we have no way of substantiating these allegations given the state of the certified record. *See e.g., Keystone Tech. Group, Inc. v. Kerr Group, Inc.,* 824 A.2d 1223, 1228 n. 6 (Pa.Super.2003), *citing Spink v. Spink,* 422 Pa.Super. 126, 619 A.2d 277, 280 n. 1 (1992). Nonetheless, even assuming appellants' allegations are true, we cannot find Rule 302(a) waiver is overcome merely because an attorney was not adequately prepared. Were we to do so, such an exception would inevitably and swiftly consume the rule.

¶ 22 Appellants next argue their counsel did actually object to producing Blow and Hanley's computers at the October 22, 2007, hearing. In support of this argument, appellants rely on an email from one of appellees' counsel wherein the latter states: "[Counsel's] reference to privilege was made early in the argument when he objected to producing the computers." Record, No. 16, Supplemental Concise Statement of Matters Complained of on Appeal, at Exb. B.

¶ 23 Appellants' argument is specious. Assuming for the moment that appellees' counsel was using the term "objection" in the technical legal sense, simply because appellees' counsel recalls an objection being made does not mean the objection was, in fact, made. The relevant portions of the transcripts, set forth above, unequivocally indicate the Orders subject to appeal were entered by consent, not over objection. N.T., Motions Hearing, 10/22/07, at 13–14 ("We can produce the computers ... That's fine with me."). Appellants' counsel did state: "We would produce [the computers], but for the *possibility* that there is attorney/client privileged information on the hard drive." *Id.* at 12 (emphasis added). When the learned trial judge pressed the issue further, however, counsel immediately capitulated and stated: "We can produce the computers." *Id.* at 13. We are at a loss as to where an objection was made. It is also worth reiterating that appellants already had consented, on August 27, 2007, to produce "all e-mails and other documents from the computers of [appellants] Scott Blow and Patrick Hanley." Rule 1925(a) Opinion at 1. Frankly, we are perplexed as to how an objection to producing the computers themselves possibly could be sustained when appellants already had agreed to produce "all e-mails and other documents" on these computers in the first instance. *See and cf.* Appellants' brief at 13, *citing In re Twenty–Fourth Statewide Investigating Grand Jury,* 589 Pa. 89, 907 A.2d 505 (2006) (additional citation omitted).

¶ 24 Appellants, again recognizing no objection actually was made, then imply the transcripts of the October 22, 2007, motions hearing could be inaccurate. *See e.g.,* Appellants' Supplemental Reply Brief to Appellee's Supplemental Brief in Support of Motion to Quash Appeal at 2872 EDA 2007, at 5. In support of this implication, appellants point out that the trial judge noted during the hearing that the attorneys needed to slow down so that the court reporter could keep up with the transcription. *Id.* at 4, n. 3, *citing N.T.,* Motions Hearing, 10/22/07, at 19. In its Rule 1925(a) Opinion, the trial court notes the following:

On appeal, for the first time in the history of this case [appellants] definitively claim that "the production of the computers would disclose [attorney-client and attorney work-product] privileged information to opposing counsel." Despite numerous discovery hearings before the trial court, [appellants] never raised any claims of privilege with respect to the contents of the computers. The closest they ever came to presenting this court with any privilege claim was the general statement that since plaintiffs did not know what was contained on the computer, there may be some privileged material. Without ever stating that there was privileged material, without ever objecting to the entry of the two discovery orders, and without ever producing any privilege log, plaintiffs may not raise such claims for the first time on appeal.

Rule 1925(a) Opinion at 2. Both the certified record, and the trial court's recollection of the motions hearing, belies appellants' implication that the transcript could be incomplete. *See also Keystone Tech. Group, Inc., supra* at 1228 n. 6, *citing Spink, supra* at 280 n. 1. We cannot establish our jurisdiction on the basis of speculation when such speculation directly contradicts the evidence of record and the trial court's analysis of this evidence.

¶ 25 Appellants, who invoke the "colorable claim" standard for determining whether the underlying Orders are collateral in nature, have failed to satisfy this standard due to the fact that they implicitly waived their claim of attorney-client privilege pursuant to Pennsylvania Rule of Appellate Procedure 302(a) through their counsel's failure to invoke and/or assert the privilege before the trial court. Inasmuch as the Orders subject to appeal are not collateral in nature under the circumstances of this case, we do not have jurisdiction to consider the merits of the appeals. These consolidated appeals, therefore, are quashed.

¶ 26 Appeals quashed.

¶ 27 Jurisdiction relinquished.

¶ 28 Judge BOWES files a Dissenting Opinion.

DISSENTING OPINION BY BOWES, J.:

¶ 1 As this Court issued an order granting Appellants' emergency application for a *supersedeas* of the discovery orders on November 16, 2007,[8] and Appellees simultaneously informed this panel that they advised Appellants to catalog the privileged materials and forward them to the trial court for *in camera* review, the issue presented herein has become moot, and the appeal should be dismissed. Thus, I respectfully dissent.

¶ 2 It is well-settled that an actual controversy must exist at every stage of the judicial process; otherwise, the matter will be dismissed as moot. *Fitzpatrick v. Fitzpatrick*, 811 A.2d 1043, 1045 (Pa.Super.2002). Pennsylvania courts do not issue purely advisory opinions or address hypothetical questions. *Erie Insurance Exchange v. Claypoole*, 449 Pa.Super. 142, 673 A.2d 348, 352 (1996). In keeping with these principles, we should not enter a judgment or decree that cannot be given effect unless: (1) the question presented is

---

8. In response to Appellants' emergency petition, wherein they averred that they could not comply with the discovery orders "without disclosing attorney-client privileged documents and information to opposing counsel and/or third parties," this Court issued a *per* *curiam* order staying the proceedings and directing Appellants "to immediately take all steps necessary to retrieve any discoverable, non-privileged information from their computers within 30 days of the date of this order." Order, 11/16/07, at 1.

capable of repetition and apt to elude appellate review; (2) a party will continue to be prejudiced by the trial court's decision; or (3) the issue is of great public importance. *Id.* at 353.

¶ 3 In the case at bar, both parties have informed this panel that the underlying issue was resolved after the notice of appeal was filed. *See* Appellees' motion to quash, 11/13/07, at 3; Appellants' reply brief at 8. However, the majority rejects these assertions because Appellants did not "include any evidence that [they complied with the discovery orders] within the certified record, the supplemental certified record or ... the reproduced record." Majority opinion at 1228 n. 2. I disagree with this assessment. In my view, these representations are credible because: (1) attorneys, as officers of the court, are prohibited from making false statements of material fact to judges;[9] and (2) all of the parties agree that the present appeal became moot when Appellees recommended an *in camera* evaluation of the challenged items.[10] Hence, we should not grant review because the unusual events that prompted this appeal are not likely to reoccur in future cases, and neither party will be prejudiced if the appeal is dismissed.

¶ 4 Furthermore, the majority's contention that an appellant cannot invoke the attorney-client privilege to prevent the dissemination of confidential materials because the appellant's attorney failed to object to an overbroad discovery request violates the established principle that only the client can waive the privilege. Indeed, none of the cases cited by the majority supports its holding in this case. Our Supreme Court did not address any attorney-client privilege issues in *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974), *Commonwealth v. Freeman,* 573 Pa. 532, 827 A.2d 385 (2003), or *Kelley v. Mueller,* 590 Pa. 91, 912 A.2d 202 (2006), and this Court's analysis of the Commonwealth's failure to invoke a non-existent "executive privilege" in *Commonwealth v. Kauffman,* 413 Pa.Super. 527, 605 A.2d 1243, 1246–1248 (1992), was *dicta* because the Commonwealth did not assert the privilege on appeal. *See id.* at 1248. Moreover, to the extent that the *Kauffman* Court cited Goodrich–Amram 2d, Depositions and Discovery, section 4011 for the proposition that "a failure to claim the [attorney-client] privilege [during pretrial discovery] waives it," *id.* at 1248, that statement is misleading because the relevant portion of section 4011(c) currently reads:

> Any party ... may waive a right to invoke a privilege where the party fails to assert the privilege as an objection to a proposed discovery request. Indeed, the preclusion of disclosure in discovery

---

9. Rule 3.3(a)(1) of the Pennsylvania Rules of Professional Conduct provides that a lawyer shall not knowingly "make a false statement of material fact to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

10. Herein, Appellants explain that "[t]he only reason that this appeal has continued is that Appellees have not ceased in their pursuit of the computer hardware at issue despite the trial court's receipt of all recovered, responsive documents in which Appellants claim privilege." Appellants' reply brief at 8. As all

parties agree that Appellants have complied with the spirit of the discovery orders by extracting the requisite information from their virus-infected computers, the order directing Appellants to produce the actual computers should be vacated as moot on remand. *See Anastasoff v. United States,* 235 F.3d 1054 (8th Cir.2000) (as appeal became moot when government agreed to issue tax refund, case was remanded to district court with instructions to vacate its previously-entered judgment in favor of government as moot and to consider taxpayer's claim for attorneys' fees).

proceedings on the ground that a matter is privileged is not automatic. In addition, privilege as to documents may be waived by the previous act of permitting inspection of the documents, by injecting a privileged communication as an issue in the action, or by pleading a privileged matter as a defense. **However, because the attorney-client privilege belongs to the client, only the client can waive its protections.**
9A Goodrich–Amram 2d, Depositions and Discovery, § 4011(c):5, Amram Commentary (emphasis added). Accordingly, there is no pertinent legal authority for the majority's position that an attorney who has not consulted with his clients can prospectively waive the attorney-client privilege by agreeing to produce certain items for discovery when the attorney knows or has reason to believe that those items contain privileged information.[11]

¶ 5 In fact, this Court has specifically held that an unopposed discovery request cannot trump the attorney-client privilege. In *McGovern v. Hospital Service Ass'n*, 785 A.2d 1012 (Pa.Super.2001), two health care providers and an individual were sued for breach of contract and tortious interference with contractual relations after they terminated an agency agreement with a corporation that provided managers for several health insurance programs. The defendants were served with a discovery request for various documents that allegedly contained confidential information but failed to object to the request within thirty days as required by Pa.R.C.P. 4009.12.

When they subsequently invoked the attorney-client privilege to protect the sensitive files, the plaintiffs countered that all objections had been waived, and following a hearing, the defendants were ordered to produce every document identified in the discovery request.

¶ 6 On appeal, this Court reversed and remanded, finding that the trial court erred in ordering the wholesale surrender of all requested documents, including privileged materials, as a sanction for a discovery violation without first considering: "(1) the nature and severity of the discovery violation; (2) the defaulting party's willfulness or bad faith; (3) prejudice to the opposing party; and (4) the ability to cure the prejudice." *Id.* at 1019. Consistent with this view, the *McGovern* Court stated in relevant part:

> While it remains to be seen if indeed the underlying materials fall under the protection of the attorney-client privilege, the trial court at the very least must conduct an *in camera* inspection of the documents to determine this contention. Pa.R.C.P. 4003.1 clearly states that subject to the provisions of Rules 4003.2 to 4003.5, "a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ." Pa.R.C.P. 4003.1 (emphasis added). We are unaware of any case law that suggests a trial court may order the discovery of privileged material as a sanction let alone without any bal-

---

**11.** The majority repeatedly cites to this Court's recent decision in *Carbis Walker, LLP v. Hill, Barth & King, LLC*, 930 A.2d 573 (Pa.Super.2007), for the proposition that an attorney can unilaterally waive the attorney-client privilege. While *Carbis Walker* does address that topic, that decision is inapplicable here because it involved a scenario where a lawyer inadvertently sent a confidential letter to opposing counsel, thereby disclosing

privileged information without his client's knowledge. *Id.* at 576. This case is clearly distinguishable because: (1) no confidential documents have been sent to Appellees; (2) Appellants claim that surrendering their computers will result in the **future** dissemination of confidential materials; and (3) they are invoking the attorney-client privilege to prevent that result.

ancing. Accordingly, we are extremely reluctant to affirm any order that compels full discovery when the information being sought may be privileged. We therefore find that failure to file objections [to a discovery request] within the thirty-day time period does not automatically waive the right to object.

*Id.* at 1018–1019.

¶ 7 The instant case is analogous to *McGovern* and should be decided accordingly. As evidenced by its Pa.R.A.P.1925(a) opinion, the trial court became irritated when it learned that Appellants did not comply with an August 2007 discovery request for computer-generated documents and that they failed to promptly inform the court or opposing counsel that their computers were inoperable. Thus, at the October 2007 hearing on Appellees' motion to compel discovery, the court asserted that Appellants should send the computers to Appellees for inspection because the machines were "obviously no good to [Appellants]." N.T. Hearing, 10/22/07, at 11. In response, Appellants' counsel, Kenneth Ferris, who was "sitting in" for lead counsel, Henry Van Blunk, stated that: (1) he had been told that technicians were working to resolve the problem; and (2) the computers' hard drives might contain "attorney/client privileged information." *Id.* at 6, 12. However, when the court subsequently asked how it should proceed, Mr. Ferris, who obviously never conferred with Appellants, inexplicably replied, "We can produce the computers." *Id.* at 13.

¶ 8 While it remains unclear as to why Mr. Ferris represented that Appellants would willingly surrender their computers, one thing is apparent: the trial court should not have issued an order requiring Appellants to send the machines to Appellees after Mr. Ferris indicated that the hard drives could contain confidential information. Although no objection was lodged at the hearing, the trial court was aware that directing Appellants to relinquish their computers might cause privileged information to be compromised; however, the court consciously ignored that risk in order to expedite the discovery process and quite possibly to punish Appellants for failing to honor the August 2007 discovery request. This action should not have occurred. As we observed in *McGovern*, *supra*, a court that is presented with a discovery violation should not order or pressure a party to produce materials that may be subject to the attorney-client privilege without considering the nature and severity of the violation, the defaulting party's willfulness or bad faith, prejudice to the opposing party, and the defaulting party's ability to cure the prejudice. None of these factors was considered in the case *sub judice*, and there is no indication that the prejudice to Appellees, if any, could not have been cured by Appellants in an expedient manner. Indeed, the parties have advised this Court that the underlying dispute has already been resolved.

¶ 9 Considering the circumstances of this case, applicable law, and the fact that the attorney-client privilege is a critical facet of our justice system, I would hold that Appellants are not barred from invoking the privilege at this juncture, if this appeal was still properly before us. *Accord Amtrak v. Fowler,* 788 A.2d 1053, 1061 (Pa.Cmwlth.2001) ("[T]he defense of privilege is not waived by the untimely filing of an objection to a discovery request when counsel fails to timely raise that issue. In such an instance, it is counsel who should be penalized, not the client who holds the privilege.").