**[J-44-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| CHRISTOPHER TOLAND, | : | No. 11 EAP 2024 |
| | : | |
| Appellee | : | Appeal from the order of the |
| | : | Commonwealth Court of |
| | : | Pennsylvania dated February 14, |
| v. | : | 2024 at No. 315 MD 2018 |
| | : | |
| | : | SUBMITTED: March 20, 2025 |
| PENNSYLVANIA BOARD OF PROBATION | : | |
| AND PAROLE, | : | |
| | : | |
| Appellant | : | |

**OPINION**

**JUSTICE DONOHUE**                                        **DECIDED: October 6, 2025**

The Pennsylvania Parole Board ("Parole Board" and/or "Board") denied parole to Christopher Toland ("Toland") fourteen times between 2004 and 2020, contrary to the recommendations of the Pennsylvania Department of Corrections ("DOC"). Toland filed a petition for review in the Commonwealth Court seeking mandamus relief for alleged violations of his constitutional rights stemming from the Parole Board's denial of his parole in 2017.[1] When the case proceeded to discovery, the Board objected to Toland's request for disclosure of documents related to Toland's eligibility for parole by relying on a regulation promulgated by the Parole Board that declares that its records "touching on matters concerning a probationer or parolee" are "private, confidential and privileged." 37

---

[1] In 2020, Toland amended his petition for review to capture subsequent parole denials in 2018 and 2019. Unless otherwise specified, we refer exclusively to Toland's amended petition for review for purposes of this appeal.

Pa. Code § 61.2 ("Section 61.2"). The Commonwealth Court overruled the objection after determining that Toland was a beneficiary of the Section 61.2 privilege and therefore was empowered to waive it. The Parole Board then filed this interlocutory appeal. In a matter of first impression, the Parole Board contends that the plain text of Section 61.2 establishes that it is the entity that holds the privilege established thereunder and that the Commonwealth Court erred in permitting Toland to waive it.

After careful review, we affirm the Commonwealth Court's decision to overrule the Parole Board's discovery objection based on Section 61.2, but upon a distinct rationale. For the reasons discussed in this opinion, we hold that the Parole Board has no authority to create an evidentiary privilege. Thus, Section 61.2 does not create an evidentiary privilege upon which the Parole Board can rely to foreclose disclosure in discovery.

## Background

Toland was sentenced to an aggregate term of eleven to forty years of incarceration following his 1993 guilty plea to charges of rape, kidnapping, and related offenses. As such, Toland became eligible for parole in 2004.[2] The instant matter concerns the Parole Board's decisions to deny his parole in 2017, 2018, and 2019.

In his petition for review, Toland argued that the Parole Board violated his due process rights because it relied on false information and exercised its discretion in an arbitrary and capricious manner, and that the Board's application of parole standards[3] promulgated after his sentence became final violated the ex post facto prohibitions of both the United States and Pennsylvania Constitutions. The Commonwealth Court overruled the Parole Board's preliminary objections to these claims in 2021. *Toland v. Pa. Bd. of*

---

[2] "The power to parole granted … to the [Parole Board] may not be exercised … at any time before, but only after, the expiration of the minimum term of imprisonment fixed by the court in its sentence[.]" 61 Pa.C.S. § 6137.

[3] *See* 61 Pa.C.S. §§ 6101-6164.

*Prob. & Parole*, 263 A.3d 1220 (Pa. Commw. 2021).[4]  The Board did not file an appeal from that decision.

Toland subsequently served and the Parole Board responded to two sets of interrogatories and a request for production of documents.  The Parole Board objected to almost all inquiries, with a significant number of its objections premised in whole or in part on its assertion of the Section 61.2 privilege.  Specifically, the Board answered twelve of the first set of interrogatories with a template objection that its "decision-making processes are private, confidential, and privileged."  Parole Board's Answers to Plaintiffs' First Set of Interrogatories, 2/6/2022, ¶¶ 17-18, 28, 30, 32, 35-36, 39-41, 43, 44 (citing 37 Pa. Code. § 61.2).  The Parole Board objected to most of Toland's requests for documents on a similar basis, stating, in boilerplate fashion:

> The [Parole] Board objects to this request as producing any of the requested documents would violate its confidentiality regulation.  Specifically, the [Parole] Board's regulation provides that "[r]ecords, reports and other written things and information, evaluations, opinions and voice recordings in the Board's custody or possession touching on matters concerning a probationer or parolee are private, confidential and privileged[.]"  37 Pa. Code § 61.2.

Parole Board's Responses to Petitioner's First Request for Production of Documents, 2/7/2022, ¶¶ B-C, E, G-L.  The Board also objected to several of Toland's second set of

---

[4]  The Commonwealth Court rejected the Parole Board's claims that Toland's amended petition lacked sufficient specificity to support Toland's due process claims, that mandamus may not be used to review its discretionary decision to deny parole, and that Toland failed to state facts sufficient to establish an ex post facto claim.  *Toland*, 263 A.3d at 1231 (overruling the Board's preliminary objection on the basis of insufficient specificity); *id.* at 1233 (observing that while direct appellate review of a Parole Board's decision is not available, a writ of mandamus may be available to address constitutional violations); *id.* at 1237 (stating that Toland "submitted more than just the conclusory allegations" the court had previously rejected and instead followed the Third Circuit's recommendations in *Richardson v. Pennsylvania Board of Probation and Parole*, 423 F.3d 282, 284 (3d Cir. 2005), by showing that the "average time served prior to parole has more than doubled for prisoners with convictions similar to [Toland] from 1993 to 2016").

interrogatories. Parole Board's Answers to Plaintiff's [Second] Set of Interrogatories,[5] 3/31/2022, ¶¶ 6, 12, 28-29, 31, 33, 39, 40, 43, 49-50, 52, 54 (stating, in each instance, that the Parole Board's "decision making processes are private, confidential, and privileged" pursuant to Section 61.2).

Toland subsequently filed a motion to dismiss the Parole Board's objections and the Parole Board responded. *See* Motion to Dismiss Respondent's Objections to Petitioner's Discovery Requests, 5/4/2022 ("Motion to Dismiss"); Response to Motion to Dismiss Respondent's Objections to Petitioner's Discovery Requests, 6/20/2022. After the parties were ordered to file memoranda of law, the Commonwealth Court heard argument on September 11, 2023, and issued its decision on February 14, 2024. *Toland v. Pa. Bd. of Prob. & Parole*, 311 A.3d 649, 654 (Pa. Commw. 2024).

**Decision Under Review**

The Commonwealth Court first addressed the threshold question of whether this case was moot and, alternatively, whether a mootness exception applied. The Parole Board asserted that Toland's mandamus action targeting his parole denials in 2018, 2019, and 2020, was rendered moot by the more recent parole denial in 2022, wherein the Board had ostensibly followed its pre-1996 guidelines. *Toland*, 311 A.3d at 657. The Commonwealth Court found that the case was not moot, instead agreeing with Toland that the alleged factual inaccuracies in his parole record would "continue to taint any subsequent parole denial" and, therefore, that mandamus relief was still possible despite the intervening parole denial. *Id.* at 660. The court also found that a mootness exception applied as the issues were capable of repetition and likely to evade review because "by the time Toland achieved any meaningful progress in litigation alleging defects with his

---

[5] This was mislabeled by the Parole Board as its response to Toland's "first" set of interrogatories.

2022 parole denial, a subsequent parole interview and decision would likely have mooted his case" again. *Id.* The Parole Board does not challenge this aspect of the Commonwealth Court's decision in this appeal.

The Commonwealth Court next addressed the litany of objections raised by the Parole Board in response to Toland's requests for the production of documents. Most pertinent here, the court focused on the following document requests:

> B. Produce all documents relating to the assessments made by the Sexual Offenders Assessment Board (SOAB) conducted on [Toland] in or around the years 1996-1999 which was requested by the ... Board under 42 Pa.C.S.[ ] § 9799.24 [of the Sex Offender Registration and Notification Act].
>
> C. Produce each Parole Decisional Instrument (PBPP-361) forms completed, the identity of person(s) filling it out and date completed for the fourteen (14) parole interviews conducted on [Toland][.]
>
>       *    *    *
>
> E. Produce each Level of Service Inventory-Revised (LSIR) assessment completed, the identity of person(s) evaluating it, and date completed for the fourteen (14) parole interviews conducted on [Toland].
>
>       *    *    *
>
> G. Produce each Static 99 assessment(s) completed, the identity of person(s) evaluating it and date completed for the fourteen (14) parole interviews conducted on [Toland].
>
> H. Produce each DC-13A, Integrated Case Summary forms prepared by the [DOC] for the ... Board prior to all fourteen (14) parole interviews conducted on [Toland].
>
> I. Produce each [DOC] vote sheets completed prior to all fourteen (14) parole interviews conducted on [Toland].
>
> J. Produce each of the eight (8) [DOC] psychological reports transmitted and/or given to the ... Board which have been completed o[n] [Toland] since his minimum date of January 2004.

K. Produce any report(s), evaluation(s), or assessments made by the [DOC] and provided to the ... Board which indicate that [Toland] is a risk to the community.

L. Produce any court, police, criminal records, criminal complaint forms, pre-sentence reports, and psychological reports prepared by Philadelphia County and transmitted to the ... Board which have been reviewed prior to each of the parole interviews conducted on [Toland].

*Id.* at 663 (citing Request for Production of Documents, ¶¶ B-C, E, G-L).[6]

The Commonwealth Court rejected the Parole Board's claim that most of the above-listed documents, although held in the Board's possession, could not be disclosed pursuant to Section 9106 of Pennsylvania's Criminal History Record Information Act ("CHRIA"), 18 Pa.C.S. §§ 9101-9183. The court found that the Board failed to meet its burden to show that CHRIA precluded disclosure,[7] observing that although the Board baldly alleged that the requested documents were protected under CHRIA, it failed to "provide any analysis as to why the information Toland seeks amounts to one of the three types of protected information." *Toland*, 311 A.3d at 670. The court also found that the Parole Board failed to meet its burden to show disclosure of Toland's pre-sentence reports was barred by Pa.R.Crim.P. 703. *Id.* at 672. In both instances, the court determined that the Parole Board had effectively waived these claims for lack of development. *Id.* at 670, 672. Similarly, the Commonwealth Court found that the Board did not satisfy its burden to show non-discoverability based on "boilerplate objections" alleging that Toland's interrogatories were "[v]ague, argumentative, overbroad,

---

[6] The court cited directly to Appendix A of the Motion to Dismiss, which contained a reproduction of Toland's Request for Production of Documents.

[7] The court applied the general rule that because the Pennsylvania Rules of Civil Procedure broadly permit discovery regarding any matter not privileged, *see* Pa.R.C.P. 4003.1, "the objector to a discovery request must demonstrate non-discoverability[.]" *Koken v. One Beacon Ins. Co.*, 911 A.2d 1021, 1025 (Pa. Commw. 2006).

ambiguous, unduly burdensome, and not reasonably calculated to lead to admissible evidence[.]" *Id.* at 676 (emphasis omitted).[8] The Parole Board does not challenge these rulings in the appeal currently before this Court.

Most pertinent here is the Commonwealth Court's holding regarding the Parole Board's invocation of the privilege referenced in Section 61.2. After quoting its text, the court noted that its research uncovered "no other case involving this particular Regulation in the discovery context." *Id.* at 665.

The court first considered the Parole Board's reliance on a case involving attempts to secure records from a parole file via Pennsylvania's Right to Know Law ("RTKL"), 65 P.S. §§ 67.101-67.3104. In *Coulter v. Pennsylvania Board of Probation and Parole*, 48 A.3d 516 (Pa. Commw. 2012), a parolee sought "Home Plans" from the Office of Open Records ("OOR") that were held by the Parole Board.[9] The *Coulter* court held that the Home Plans were not subject to disclosure under the RTKL because they were not public records, as evidenced by Section 61.2. *See Coulter*, 48 A.3d at 519 (observing that "if all Home Plans were considered public records, they would be open to the entire public at large which could have adverse effects on all parolees"). The Commonwealth Court distinguished *Coulter* from the instant case because the RTKL implicates "unique policy concerns" regarding "the potential for **public** access to sensitive information in parolees' files." *Toland*, 311 A.3d at 666 (emphasis in original). Consequently, the court found that

> it makes more sense to limit public access to sensitive parole files via the RTKL, even if the parolee or would-be parolee cannot access them, than it does in the discovery context.

---

[8] However, the court found that five individual interrogatories had been answered "fully and completely" for purposes of Pa.R.Civ.P. 4006(2) ("Each interrogatory shall be answered fully and completely unless objected to, in which event the reasons for the objection shall be stated in lieu of an answer.").

[9] A Home Plan "helps determine where the parolee will live while on parole" and "must be approved by the Board." *Coulter*, 48 A.3d at 517 n.2 (citation omitted).

> That is so because discovery, of course, does not implicate the RTKL's policy concern of wide potential public disclosure, especially given the safeguards courts may erect around the discovery process.

*Id.*

The lower court also discussed two other cases involving the intersection between Section 61.2 and the RTKL. In *Jones v. Office of Open Records*, 993 A.2d 339 (Pa. Commw. 2010), the would-be parolee sought disclosure through the RTKL of parole recommendations issued by the prosecutor and sentencing judge. The *Jones* Court considered the RTKL's statutory presumption that records held by a Commonwealth agency are public records. *See* 65 P.S. § 67.305(a). That presumption is subject to exceptions for privileged records, *see id.* § 67.305(a)(2), and for records "exempt from disclosure under any other Federal or State law or regulation or judicial order or decree[,]" *id.* § 67.305(a)(3). The *Jones* Court found that Section 61.2 fit the latter exception, but did not consider whether it satisfied the former. *See Jones*, 993 A.2d at 343. Addressing the impact of Section 61.2 in the context of the RTKL's public record presumption, Jones argued, unsuccessfully, that he was not a "parolee" within the meaning of Section 61.2. *Jones*, 993 A.2d at 343.

The Commonwealth Court also examined its decision in *Vu v. Pennsylvania Board of Probation and Parole*, 200 A.3d 627 (Pa. Commw. 2018), where an inmate requested reports, evaluations, and assessments related to the reasons for denial of his parole. The *Vu* court considered two claims regarding Section 61.2, both of which concerned the use of Section 61.2 to exempt parole files from disclosure under the RTKL. As with *Coulter*, the lower court distinguished *Jones* and *Vu* because those addressed requests under the RTKL for confidential parole records. *Toland*, 311 A.3d at 666. Neither *Coulter*, *Jones*, nor *Vu* addressed disclosure of parole-related documents in relation to the purported privilege created by Section 61.2.

Having determined that the precedents relied on by the Parole Board were distinguishable, the Commonwealth Court turned to decide whether Section 61.2's "plain language bars disclosure of the documents[.]" *Id.* The lower court recognized our well-worn rules of statutory construction as being equally applicable to the interpretation of regulations, emphasizing that in addition to plain language, a court must also consider the context in which it arises. *Id.* In examining the plain text of Section 61.2, the court focused on the phrase, "private, confidential and privileged[,]" and applied common dictionary definitions to those terms because no definition was provided in the Parole Board's regulations.[10] In the court's view, those definitions gave rise to three basic questions: "Private and secret **from whom**? If not to be known publicly, **then to be known to whom**? If privileged, **who, holding the privilege, may waive it**?" *Id.* at 667

---

[10] Specifically, the Commonwealth Court stated:

> The first definition of "private" is "intended for or restricted to the use of a particular person, group, or class." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 936 (1991). It can also mean "not known or intended to be known publicly." *Id.* (emphasis added). Black's Law Dictionary defines "private" as "[r]elating or belonging to an individual, as opposed to the public or the government," or "[c]onfidential; secret." BLACK'S LAW DICTIONARY 1315 (9th ed. 2009) (emphasis added). The relevant dictionary definition of "confidential," is "private, secret[,]" or "containing information whose unauthorized disclosure could be prejudicial to the national interest." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 275 (1991). Black's Law Dictionary defines the term as "(Of information) meant to be kept secret," giving the example of "confidential settlement terms." BLACK'S LAW DICTIONARY 339 (9th ed. 2009). Finally, the relevant definition of "privileged" is "not subject to disclosure in a court of law," WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 936 (1991), or "[n]ot subject to the usual rules or liabilities; esp[ecially], not subject to disclosure during the course of a lawsuit ... [e]njoying or subject to a privilege," BLACK'S LAW DICTIONARY 1319 (9th ed. 2009).

*Toland*, 311 A.3d at 667 (internal citations reformatted).

(emphasis in original). The Commonwealth Court found that it could "resolve the answers to these questions" by considering the terms' definitions "with an eye toward the context of the Regulation as a whole." *Id.*

Section 61.2, the court observed, is divided into two parts. The first clause defines the scope of the regulation, stating that "[r]ecords, reports and other written things and information, evaluations, opinions and voice recordings in the Board's custody or possession touching on matters concerning a probationer or parolee are private, confidential and privileged[.]" 37 Pa. Code § 61.2. The second clause, appearing in the same sentence as the first separated by a semicolon, cabins the regulation's scope with the exception "that a brief statement of the reasons for actions by the Board granting or refusing a parole will at all reasonable times be open to public inspection in the offices of the Board." *Id.* According to the Commonwealth Court, the second clause implies that the first clause is concerned with non-public information because the only exception to the general rule concerns what can be released to the public. *Toland*, 311 A.3d at 668 (stating "the drafters of this Regulation must have been concerned about disclosure of parole file information to the **public** in crafting the general rule that the information be private, confidential, and privileged because it phrases the only **exception** to the rule as allowing **public** access to specified information") (emphasis in original). The court elaborated further, reasoning as follows:

> This reading also suggests that we can envision the parolee as the beneficiary of the Regulation, and thus, we can resolve those questions as follows. The information is private and secret from **the public**, not Toland. The information is not to be known publicly, but rather **to Toland**. Toland, as the beneficiary of the privilege, holds it, **so he may waive it**.

*Id.* (emphasis in original) (citing *Maleski v. Corp. Life Ins. Co.*, 646 A.2d 1, 4 (Pa. Commw. 1994) (noting that a client, as the holder-beneficiary of the attorney-client privilege, may waive it)).

The Commonwealth Court considered but quickly dismissed the argument that the Parole Board members were the "sole beneficiaries" of the privilege. *Id.* Given that Pennsylvania law disfavors evidentiary privileges,[11] and because the lower court determined that Section 61.2's focus is on protecting information from public disclosure, the court determined that Parole Board members should not be construed "as the sole beneficiaries of the privilege." *Id.* The court found further support for this interpretation in the fact that the Parole Board previously produced similar documents in the context of federal litigation. *Id.*

Judge Mary Hannah Leavitt dissented on grounds not relevant to the instant appeal.[12]

**Issue**

> Did Commonwealth Court err by holding that Toland was the holder of the privilege created by the Board's regulation at 37 Pa. Code § 61.2 and was therefore entitled to waive the privilege as its beneficiary?

---

[11] "Pennsylvania law does not favor evidentiary privileges." *Joe v. Prison Health Servs., Inc.*, 782 A.2d 24, 31 (Pa. Commw. 2001) (citing *Commonwealth v. Stewart*, 690 A.2d 195 (Pa. 1997)). *See also Herbert v. Lando*, 441 U.S. 153, 175 (1979) ("Evidentiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances.") (footnote omitted); *United States v. Nixon*, 418 U.S. 683, 710 (1974) ("Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.").

[12] Judge Leavitt would have denied Toland's motion to dismiss the Parole Board's objections on relevancy, overbreadth, and mootness grounds. *Toland*, 311 A.3d at 683 (Leavitt, J., dissenting) ("None of Toland's document requests, with the possible exception of his criminal records, are relevant to his substantive due process claim that the Parole Board considered a false criminal history in its parole denials of 2017, 2018, and 2019."); *id.* ("Toland appears to have been granted the relief he seeks in his challenge to the Parole Board's decisions of 2017, 2018, and 2019, i.e., a new parole interview" in 2022, where his "parole was considered on the basis of the statutory standards he believes are appropriate, given his conviction prior to 1996."). Judge Leavitt did not express disagreement with the Majority regarding the purported Section 61.2 privilege.

Parole Board's Brief at 4.[13]

**Parties' Arguments**

Parole Board

The Parole Board argues that the "most straightforward reading of [Section 61.2] is that the Board holds a privilege over any documents it possesses when it reviews inmates for parole." Parole Board's Brief at 7. It also believes that the Commonwealth Court misidentified the purpose of Section 61.2 in reaching its interpretation, and instead contends that it is meant "to foster the frank exchange of information and opinions for use in the parole decision making process." *Id.* at 8. The Parole Board continues to rely on the Commonwealth Court's RTKL cases and faults the Commonwealth Court for relying on "federal decisions where state law privileges do not apply." *Id.* at 7-8.

The Parole Board first emphasizes that it has exclusive power to parole inmates under specifically defined statutory standards. *Id.* at 11-12 (citing 61 Pa.C.S. §§ 6132(a) (defining the Board's power to parole state prisoners); 6135(a) (listing factors the Board must consider when investigating whether to parole)). The Board notes that, pursuant to that statutory scheme, public officials are obligated to furnish it with records. *Id.* at 12 (citing 61 Pa.C.S. § 6135(b) ("A public official who possesses such records or information shall furnish the records or information to the board upon its request and without charge so far as may be practicable[.]")). The Parole Board avers that "[p]ublic officials who submit documents to the Board do so with the understanding that the regulation means what it says, i.e., their submissions are 'private, confidential and privileged' and will not be provided to inmates being considered for parole." *Id.*

Next, the Parole Board asserts that the Commonwealth Court relied on *Coulter*, *Jones*, and *Vu*, but that none of those decisions supports "the conclusion that an inmate

---

[13] This issue is before this Court on collateral appeal pursuant to Pa.R.A.P. 313.

can waive the privilege created by the Board's regulation." *Id.* The Board continues to maintain that although those cases addressed RTKL claims and not the Section 61.2 privilege as a stand-alone bar to disclosure in discovery, they support the Board's view that the Board alone holds the privilege in the regulation. *Id.* at 12-14. The Board maintains that the RTKL cases show that documents held by the Board are not public records because they are privileged under Section 61.2. *Id.* at 14.

Addressing Toland's ability to waive the privilege, the Board contests the Commonwealth Court's reading of the second clause of the regulation. It argues the second clause mirrors language in the Prisons and Parole Code that requires the public disclosure of the reasons for granting or denying parole. *Id.* at 15 (citing 61 Pa.C.S. § 6139(a)(5) ("Whenever an offender is paroled by the board, or whenever parole is refused by the board, a brief statement of the reasons for the board's action shall be filed of record in the offices of the board and shall be at all reasonable times open to public inspection.")). Consequently, the Board argues the "requirement that the Board's decisions are available to the public would exist even if the regulation did not" and, thus, the "fact that this statutory requirement is referred to in the regulation[] should not lead to the conclusion that the inmate is the beneficiary of the regulation." *Id.* The Board contends that the proper reading of the plain text of Section 61.2 is that "the Board holds a privilege over any documents it possesses concerning a parolee, but the Board's decision to grant or deny parole is public." *Id.* at 15-16.

The Board also believes the Commonwealth Court's analogy to the attorney-client privilege is "flawed" because the "attorney-client privilege is intended to foster candid communications between legal counsel and a client so counsel can provide legal advice based upon the most complete information possible from the client." *Id.* at 16 (citing *Commonwealth v. Chmiel,* 738 A.2d 406 (Pa. 1999)). It contends that

> [u]nlike the attorney-client privilege, the privilege created by the Board's regulation applies to documents the Board receives from third parties to the Board, so the Board can make a paroling decision based on the considerations required by the statute. None of the information sought by Toland's discovery requests is provided to a potential parolee for the purpose of providing legal or any other guidance.

*Id.* at 16.

Next, the Parole Board distinguishes the federal cases cited by the Commonwealth Court because "federal courts are not bound by state privileges in federal habeas corpus proceedings." *Id.* at 17 (citing Fed. R. Evid. 501; *Pearson v. Miller*, 211 F.3d 57, 68 (3d Cir. 2000)). The Board asserts that the "Commonwealth Court's discounting of the Board's arguments vis-à-vis federal cases where state privileges do not apply appears to be a challenge to the wisdom or policy behind the regulation, rather than an interpretation of the regulation as it is written." *Id.*

The Parole Board defends the Section 61.2 privilege against the general rule that Pennsylvania law disfavors privileges, asserting that it is necessary to "promote frank discussions" about the parole decisions. *Id.* at 18. The Board contends that, in *Commonwealth v. Harris*, 32 A.3d 243, 249 (Pa. 2011), this Court recognized "the free airing of concerns that privileges are intended to foster will be curtailed if parties are unable to speak without worrying that a confidant ordinarily subject to a privilege will one day be forced to repeat confidences." *Id.* (quoting *Harris*, 32 A.3d at 249). It also argues that "attempts to probe the thought and decision-making processes of judges and administrators are generally improper" and that the privilege allows "the free exchange of ideas and information." *Id.* (citing *Commonwealth. v. Vartan*, 733 A.2d 1258, 1263 (Pa. 1999) (OISA)).

Finally, in the last two pages of its brief, the Board offers its only arguments directed specifically at some of the requested documents:

> [T]he Parole Decisional Instruments (PBPP-361) requested by Toland are circulated among Board members during the parole review process. These documents are used by Board members to record and communicate their observations, impressions, and professional opinions about inmates under parole consideration. Allowing inmates who have been denied parole to have access to Board member thoughts and impressions would put the Board members in the proverbial fishbowl and deter the frank exchange of ideas and opinions on whether a particular inmate should be paroled. Similarly, allowing inmates to waive the Board's regulation and review [SOAB] assessments, records and recommendations from the [DOC], psychological reports, and other information that public officials are required to provide to the Board would … deter the frank exchange of information, ideas and opinions the Board relies on when deciding to parole an inmate.

*Id.* at 19.

### Toland

Toland generally endorses the decision of the Commonwealth Court. Toland's Brief at 6 (stating that "[s]ince the regulation prevents the public from accessing information about parolees, Toland is a beneficiary of the privilege created by the regulation and he could potentially waive it" and that the Parole "Board has not met [its] burden of showing that the regulation prevents disclosure of the requested discovery"). However, he raises two threshold concerns; first, he contends that the Parole Board has failed to show that the Commonwealth Court's discovery ruling is appealable as a collateral order under Pa.R.A.P. 313. *Id.* at 5; 7-9. Second, Toland also contends that the Board abandoned, and therefore waived, its argument that the Commonwealth Court erred in overruling the Board's objections to his discovery requests. *Id.* at 5; 26-27.

With respect to Rule 313, Toland contends that the Parole Board made no argument to establish the three elements of the collateral order doctrine.[14] Toland

---

[14] An appeal from a collateral order may be taken as of right. Pa.R.A.P. 313(a). A collateral order is one that is 1) separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) concerns a claim that will be (continued…)

acknowledges that this Court has held that orders overruling claims of privilege are immediately appealable under Rule 313. Toland's Brief at 8. However, he contends "that broad conclusion must be tempered by the appreciation that the collateral order doctrine is to be narrowly construed in order to buttress the final order doctrine and in recognition that a party may seek an interlocutory appeal by permission pursuant to Appellate Rule 312." *Id.* (citing *Rae*, 977 A.2d at 1126). Toland complains that the Parole Board has utterly failed to explain how Rule 313 is appropriate in the circumstances of this case and argues that this Court should not make those arguments for the Board. *Id.* at 9.

Toland also asserts that the Parole Board waived its claim that the Commonwealth Court erred by overruling the Board's objections based on the Section 61.2 privilege. *Id.* at 26. He notes that the Parole Board raised two claims in its jurisdictional statement, one specifically challenging the court's order overruling the Board's objections, and a second pertaining solely to the legal question regarding whether Toland can waive the Section 61.2 privilege.

On the merits, Toland recounts the Commonwealth Court's analysis and largely endorses it. *Id.* at 11-12. He adds that the legislature explicitly created an evidentiary privilege in the Prisons and Parole Code for the Parolee Homicide Review Team[15] with specificity. *Id.* at 12 (citing 61 Pa.C.S. § 6163(d) ("**(d) Discovery.--**The discussions, deliberations and records of the Parolee Homicide Review Team are privileged and confidential and shall not be subject to discovery, subpoena or introduction into evidence in any civil or criminal action.")). By contrast, Toland argues, Section 61.2 "does not

---

irreparably lost if review is postponed until after a final judgment. *Rae v. Pa. Funeral Dirs. Ass'n*, 977 A.2d 1121, 1125 (Pa. 2009) (citing Pa.R.A.P. 313(b)).

[15] "The department shall establish the Parolee Homicide Review Team, which shall examine circumstances surrounding those who have committed criminal homicide while under supervision by the board." 61 Pa.C.S. § 6161(a).

mention anything about records of the Parole Board … not being available through the discovery p[r]o[c]ess." Toland's Brief at 12-13.[16]

Regarding the documents requested, Toland avers that "[e]ach of the documents would provide evidence of relevant information necessary to prove his claims" and that "[e]ach document contains **factual information** which the Board used in the parole review process." *Id.* at 13 (emphasis added). He asserts that he requested a Sexual Offender Assessment Board (SOAB) report because it is integral to his ex post facto claim. He contends the documents produced by the Parole Board itself ("Parole Decisional Instrument, LSIR, and Static 99") would show that his scores have not changed over time and that the Board had used the wrong parole statutes. He avers that the documents produced by the DOC in the Board's possession ("DC-13A Integrated Case Summary, vote sheets, reports, evaluations, and psychological reports") will show that the DOC does not find Toland to be a risk and that he "has completed all programming, has no misconducts, continuously earned unanimous DOC parole support[,] and state he should be paroled." *Id.* at 14-15. Finally, he contends that the documents requested from Philadelphia County will confirm or deny the "false information stated to him" during past parole hearings. *Id.* at 15. He notes that the Parole Board already released to him a 1993 pre-sentence report, which included "arrest reports, investigation reports, criminal complaint forms and a mental health evaluation." *Id.* Toland argues that because of that release, the Board "waived any right to claim" that it cannot "provide these requested records due to the regulation." *Id.*

Finally, Toland points out that although the Parole Board faults the Commonwealth Court for its reliance on *Coulter*, *Jones*, and *Vu*, the court had instead distinguished those

---

[16] Toland mistakenly refers to the legislature as the author of Section 61.2, instead of the Parole Board.

cases after the Board had cited them as controlling. *Id.* at 15-16. He agrees with the lower court that the RTKL was intended to prevent disclosure to the public at large, whereas concerns about public disclosure are not present in the context of discovery "given the safeguards courts may erect around the discovery process." *Id.* at 16 (citing Pa.R.C.P. 4012);[17] *id.* at 17 (citing *Commonwealth v. Kauffman*, 605 A.2d 1243 (Pa. Super. 1992);[18] *Ben v. Schwartz*, 729 A.2d 547 (Pa. 1999)).

The Parole Board did not to file a reply brief.

## Analysis

The Parole Board ask this Court to reject the Commonwealth Court's conclusion that the privilege ostensibly created by Section 61.2 is waivable by a would-be parolee in the context of discovery during a civil action. Before we address the merits of that claim, we must first consider two preliminary matters raised by Toland.

### Jurisdiction and Waiver

Toland first contends that the Parole Board failed to meet its burden to show that the lower court's discovery order was immediately appealable under Rule 313. As we recently explained, "Rule 313 contains three criteria that an order must satisfy to meet the definition of a collateral order: separability, importance, and irreparable loss." *Brooks v.*

---

[17] Rule 4012 provides for a variety of protective orders in the context of discovery.

[18] In *Kaufmann*, the Superior Court recognized:

> The fact that the legislature excluded certain documents from public inspection does not mean that the legislature intended to bar the use of such information in judicial proceedings. The purpose of the [RTKL] was to make certain information available to members of the public. Whether information should be made available for use in court proceedings involves entirely different considerations.

*Kauffman*, 605 A.2d at 1246. We cited *Kaufmann*'s rationale approvingly in *Schwartz*. See *Schwartz*, 729 A.2d at 553-54 (stating the RTKL statute "is not applicable to discovery proceedings under the Pennsylvania Rules of Civil Procedure").

*Ewing Cole, Inc.*, 259 A.3d 359, 364 (Pa. 2021). The collateral order "doctrine is to be construed narrowly to preserve the integrity of the general rule that only final orders may be appealed; thus, the requirements for a collateral order are applied relatively stringently." *In re Twenty-Fourth Statewide Investigating Grand Jury*, 907 A.2d 505, 510 (Pa. 2006). Because the doctrine is to be construed narrowly, Toland argues that the Parole Board failed to adequately demonstrate that the lower court's discovery ruling on the applicability of an evidentiary privilege by failing to elaborate on the separability, importance, and irreparable loss factors. We disagree.

Whether discovery orders implicating evidentiary privileges are appealable under Rule 313 is well-settled law. "[O]rders overruling claims of privilege and requiring disclosure are immediately appealable" under the rule. *Harris*, 32 A.3d at 251. The applicability of an evidentiary privilege can be addressed without consideration of the merits of claims implicated by the content of the ostensibly privileged materials. *See Schwartz*, 729 A.2d at 551-52. Furthermore, whether an agency may invoke a privilege "implicates rights rooted in public policy, and impacts on individuals other than those involved in this particular litigation." *Id.* at 552. Finally, "the disclosure of documents cannot be undone." *Id.* Thus, an appeal from an order denying a government agency's assertion of an evidentiary privilege during discovery is immediately appealable under Rule 313.

We agree with Toland that the Parole Board's discussion of Rule 313 and its requirements left room for elaboration, but the Board correctly cited both *Harris* and *Schwartz* to support its assertion that this matter was immediately appealable under Rule 313. Jurisdictional Statement, 3/13/2024, at 1-2; Parole Board's Brief at 1. Moreover, Toland's reliance on *Rae* is misplaced. In *Rae*, we considered whether to "adopt an 'issue-by-issue application' of Rule 313, or whether, once the collateral order test is

satisfied with respect to one issue, an appellate court has jurisdiction to consider every issue within the ambit of the appealed order—that is, whether to adopt a 'whole order approach' to Rule 313." *Rae*, 977 A.2d at 1123. We rejected the whole order approach in *Rae*. *Id.* at 1130. Here, however, the sole issue presented for our review involves the Commonwealth Court's holding that a privilege did not apply to the Parole Board's documents. That ruling falls squarely within the categorical holding of *Harris*, the same decision cited by the Parole Board in its invocation of Rule 313. *See Harris*, 32 A.3d at 251. Accordingly, we reject Toland's argument that the Parole Board failed to meet its burden to establish appealability under Rule 313.

Next, Toland contends that the Parole Board's issue is subject to waiver based on its failure to include an issue that it previously raised in its Jurisdictional Statement. In the Jurisdictional Statement, the Board presented us with the following issues:

> I. Did Commonwealth Court err by holding that Toland was the holder of the privilege created by the Board's regulation at 37 Pa. Code § 61.2 and was therefore entitled to waive the privilege as its beneficiary?
>
> II. Did Commonwealth Court err by overruling the Board's objections to discovery requests that were based on the privilege created by 37 Pa. Code § 61.2?

Jurisdictional Statement at 4. The Parole Board now presents only the first question above, verbatim. Parole Board's Brief at 4.

We ascertain no waiver in these circumstances. The Parole Board did not include an issue in its brief that had not been included in its Jurisdictional Statement; to the contrary, the Board omitted from its brief one of two issues raised in its Jurisdictional Statement. Furthermore, the second issue in the Jurisdictional Statement was redundant; the court's overruling of the Board's objections regarding the Section 61.2 privilege was based solely on the court's determination that Toland could waive it.

We now consider the question presented for our review, which asks whether the privilege ostensibly created by Section 61.2 is waivable by a would-be parolee for purposes of discovery in a civil action. Issues involving the application or waiver of a privilege are questions of law. *Levy v. Sen. of Pa.*, 65 A.3d 361, 367 (Pa. 2013). Consequently, our standard of review is de novo and our scope of review is plenary. *Id.* After such review, we conclude that the issue is moot because the Parole Board does not have the power to create an evidentiary privilege that is enforceable in our courts. Thus, we affirm the decision of the Commonwealth Court on this alternative ground.[19]

The essence of the matter before us concerns the Parole Board's assertion that Toland cannot waive the evidentiary privilege it ostensibly created when it promulgated Section 61.2. That regulation provides:

> Records, reports and other written things and information, evaluations, opinions and voice recordings in the Board's custody or possession touching on matters concerning a probationer or parolee are private, confidential and privileged; except that a brief statement of the reasons for actions by the Board granting or refusing a parole will at all reasonable times be open to public inspection in the offices of the Board.

37 Pa. Code. § 61.2.

By necessity, our plenary scope of review encompasses the predicate assumption embedded in the question presented, which is that Section 61.2 created an evidentiary privilege. Only if that assumption is true can we consider whether a potential parolee can waive that privilege. It would be an exercise in futility to expound upon the waivability of a non-existent privilege.

---

[19] This Court has discretionary authority to affirm an order of a lower court for any valid reason supported by the existing record. *See In re Adoption of C.M.*, 255 A.3d 343, 363 (Pa. 2021). This is because we review the propriety of a judgment or order, rather than any particular rationale employed below. *Id.*

An evidentiary privilege is a privilege[20] that allows a person or entity "to refuse to provide evidence or to protect the evidence from being used or disclosed in a proceeding." *Evidentiary Privilege*, BLACK'S LAW DICTIONARY (12th ed. 2024). For instance, the attorney-client privilege is the "client's right to refuse to disclose and to prevent any other person from disclosing confidential communications between the client and the attorney." *Attorney-Client Privilege*, BLACK'S LAW DICTIONARY (12th ed. 2024). The deliberative process privilege is another type of evidentiary privilege, which "permits the government to withhold documents containing confidential deliberations of law or policymaking, **reflecting opinions, recommendations or advice**." *Joe*, 782 A.2d at 33 (emphasis added). Where recognized, the deliberative process privilege "benefits the public, and not the officials who assert the privilege." *Commonwealth v. Vartan*, 733 A.2d 1258, 1264 (Pa. 1999) (OISA).

However, Pennsylvania law disfavors evidentiary privileges because they obstruct the search for truth that is at the heart of judicial processes. *See Stewart*, 690 A.2d at 197 (citing *Herbert*, 441 U.S. at 175). Thus, we permit utilization of an evidentiary privilege "only to the very limited extent that ... excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *BouSamra v. Excela Health*, 210 A.3d 967, 975 (Pa. 2019). Consequently, a party opposing disclosure based on a privilege, including a government party, bears the burden of showing that the privilege applies. *Id.* at 982; *see also United States v. Zubaydah*, 595 U.S. 195, 209 (2022) (stating that "the Government bears the burden of showing that the privilege should apply"); *League of Women Voters v.*

---

[20] A privilege is a "special legal right, exemption, or immunity granted to a person or class of persons[.]" *Privilege*, BLACK'S LAW DICTIONARY (12th ed. 2024).

*Commonwealth*, 177 A.3d 1010, 1018 (Pa. Commw. 2017) ("The government bears the initial burden to prove that the deliberative process privilege is applicable.").

Here, the premise of the question presented for our review is that there is a cognizable evidentiary privilege, ostensibly something resembling or expanding the deliberative process privilege, **created** by Section 61.2. Parole Board's Brief at 9 ("The issue in this appeal is whether Commonwealth Court erred by concluding that a privilege created by a Board regulation is waivable[.]"). The lower court accepted this premise under the false assumption that it is a legislative mandate. *Toland*, 311 A.3d at 665 ("It first bears noting here that the party seeking to invoke a privilege to prevent the production of discovery—**here, a statutory privilege**—has the burden of demonstrating the applicability of that privilege.") (emphasis added). Launching its analysis from that false premise, the Commonwealth Court considered how to correctly construct Section 61.2 to ascertain its meaning. *Id.* at 666. Through that analysis, applying principles of statutory construction,[21] the court determined that the Section 61.2 privilege protected documents held by the Parole Board from public exposure for the benefit of would-be parolees like Toland and, because the court determined that Toland was the beneficiary of that privilege, it held that he could waive it. *Id.* at 666-68. Because the Commonwealth Court incorrectly identifies the privilege at issue as a creation of the legislature, it did not consider whether the Parole Board, an executive branch agency, had the power to create an evidentiary privilege binding on the courts. Thus, we begin our analysis by focusing on whether the Parole Board has such power and authority to bind the courts with an evidentiary privilege.

_____

[21] Although regulations, unlike statutes, are not expressions of legislative intent, courts nonetheless apply principles of statutory construction to ascertain the meaning of regulations. *See S & H Transport, Inc. v. City of York*, 210 A.3d 1028, 1038 (Pa. 2019) (stating that "we employ the interpretative principles of the [Statutory Construction Act, 1 Pa.C.S. §§ 1921-1991] to construe a regulation implementing a legislative enactment").

Privileges stem from constitutional, common law, and statutory sources. *See In re Est. of McAleer*, 248 A.3d 416, 425 (Pa. 2021). Privileges are exceptions to the "fundamental maxim that the public … has a right to every man's evidence." *United States v. Bryan*, 339 U.S. 323, 331 (1950) (quoting WIGMORE, EVIDENCE (3d ed.) § 2192). Thus, when "we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule." *Id.* (quoting WIGMORE, EVIDENCE (3d ed.) § 2192).

Constitutions give rise to privileges both explicit and implicit. The privilege against self-incrimination exists in Pennsylvania due to the explicit commands of the Fifth Amendment to the United States Constitution (applicable through the Fourteenth Amendment), and separately through Article I, Section 9 of the Pennsylvania Constitution. *See Commonwealth v. Swinehart*, 664 A.2d 957, 969 (Pa. 1995). Constitutional privileges may also rise implicitly from constitutional text and structure. In *Nixon*, the United States Supreme Court recognized a "presumptive privilege for Presidential communications" that derives in part from "the separation of powers under the Constitution." *Nixon*, 418 U.S. at 708.

Another source of privileges is the common law. The attorney-client privilege originated in the common law and "is the oldest of the privileges for confidential communications[.]" *McAleer*, 248 A.3d at 425 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Pennsylvania courts have also recognized a privilege that provides immunity from liability for statements made in judicial proceedings. *See Post v. Mendel*, 507 A.2d 351, 355 (Pa. 1986) ("When alleged libelous or defamatory matters, or statements, or allegations and averments in pleadings or in the trial or argument of a case

are pertinent, relevant and material to any issue in a civil suit, there is no civil liability for making any of them."). Privileges that existed at common law are expressly preserved in our evidentiary rules. *See* Pa.R.E. 501 ("Privileges as they now exist or may be modified by law shall be unaffected by the adoption of these rules.").

The third source of privileges is legislative. Pennsylvania courts recognize and apply statutory privileges created by our General Assembly. Many statutory privileges are codified common law privileges, including: the attorney-client privilege, 42 Pa.C.S. §§ 5916 (criminal), 5928 (civil); the spousal communications privilege, 42 Pa.C.S. §§ 5913 (criminal), 5923 (civil); the clergy-communicant privilege, 42 Pa.C.S. § 5943; the psychotherapist-patient privilege, 42 Pa.C.S. § 5944; and the physician-patient privilege, 42 Pa.C.S. § 5929. However, some statutory privileges have no common law source or analogue. For instance, the General Assembly has adopted evidentiary privileges applicable to, inter alia, communications with sexual assault counselors, 42 Pa.C.S. § 5941.1(b), school personnel, 42 Pa.C.S. § 5945, crime stoppers, 42 Pa.C.S. § 5945.2, and human trafficking caseworkers, 42 Pa.C.S. § 5945.3(b). And, as noted above, the General Assembly created a privilege in the Parole and Prisons Code applicable to the Parolee Homicide Review Team. 61 Pa.C.S. § 6163(d).

Here, the Parole Board attempts to invoke a self-created, powerful, and sweeping privilege that deviates from the everyman's evidence rule. It does not cite a constitutional, common law, or statutory source for that privilege. Instead, the Parole Board cites only Section 61.2, a regulation promulgated by the Board itself. This Court has never recognized a privilege created by the executive branch or its agencies that would bind the evidentiary decisions of the judicial branch. Indeed, it does not appear that such

privileges exist today in any jurisdiction.[22] However, asking this Court to determine whether the Section 61.2 privilege is waivable or unwaivable effectively requires us to endorse the notion that a government agency like the Parole Board possesses the power and authority to create new evidentiary privileges or expand existing ones. Nothing in our case law, nor in the case law of any jurisdiction that we are aware of, provides executive agencies with the independent power or authority to create an evidentiary privilege that limits discovery. To the contrary, it is axiomatic that "Commonwealth agencies have no inherent power to make law or otherwise bind the public or regulated entities" and, thus, "an administrative agency may do so only in the fashion authorized by the General Assembly." *Marcellus Shale Coal. v. Dep't of Env't Prot.*, 292 A.3d 921, 927 (Pa. 2023) (quoting *Nw. Youth Servs., Inc. v. Commonwealth, Dep't of Pub. Welfare*, 66 A.3d 301, 310 (Pa. 2013)). We ascertain no legislative authority permitting the Parole Board to create the evidentiary privilege in Section 61.2.[23]

Moreover, when the General Assembly intended to create a privilege applicable in the parole context, it did so explicitly. As noted by Toland, the General Assembly recently created an evidentiary privilege in the Prisons and Parole Code. Section 6163 of Title 61 provides: "The discussions, deliberations and records of the Parolee Homicide Review

---

[22] "Though the executive may **claim** privilege, it has historically not held any power to **proclaim** privilege." Mila Sohoni, *The Power to Privilege*, 163 U. Pa. L. Rev. 487, 495 (2015) (emphasis in original).

[23] In her law review article, Professor Sohoni addressed the novel circumstance that arose under the Affordable Care Act, which, inter alia, "authorized the Secretary of Labor to promulgate regulations that 'provide[] an evidentiary privilege for, and provide[] for the confidentiality of communications between or among' a host of federal and state entities, including the Treasury Department, the Department of Justice, state attorneys general, and an association of state insurance regulators with no official governmental status whatsoever." Sohoni, *supra*, at 489 (quoting 29 U.S.C. § 1134(d)). That is not the situation here. The Parole Board has never asserted that the General Assembly delegated the power to create an evidentiary privilege, nor have we discovered evidence that such delegation occurred.

Team [("PHRT")] are **privileged** and confidential **and shall not be subject to discovery, subpoena or introduction into evidence in any civil or criminal action**." 61 Pa.C.S. § 6163(d) (emphasis added). The General Assembly also created a separate evidentiary privilege for "any and all statements or testimony of the victim and of any family member submitted" to the DOC. 61 Pa.C.S. § 5906(a). As with Section 6163, Section 5906 expressly delineated the scope of the evidentiary prohibition created by specifying that such statements shall not "be subject to subpoena or discovery[,]" "introduced into evidence in any judicial or administrative proceeding[,]" nor "released to the inmate." *Id.* § 5906(a)(2)-(4).

No statutory privilege resembling that ostensibly created by Section 61.2 appears in the Prisons and Parole Code. As recognized by Toland in distinguishing the language of Section 61.2 from the statutory text of Section 6163, the former does not contain language describing the scope of the evidentiary privilege. More important, however, is that the General Assembly created privileges in Sections 5906 and 6163 applicable in specific circumstances for statements from victims held by the DOC and the deliberations of the PHRT, respectively. The General Assembly did not create a broadly applicable evidentiary privilege that applies to anything "touching on matters concerning a probationer or parolee" as articulated in the regulation. 37 Pa. Code. § 61.2. We must pay attention not just to what the legislature has said, but also to what it has not said. Under the doctrine of expressio unius est exclusio alterius, "the inclusion of a specific matter in a statute implies the exclusion of other matters." *Thompson v. Thompson*, 223 A.3d 1272, 1277 (Pa. 2020) (citation omitted). Contrary to the Commonwealth Court's erroneous assumption, Section 61.2 is not a statutory privilege.

Nor is there a common law source for the Section 61.2 privilege. The Parole Board cited *Coulter* below in support of its interpretation of Section 61.2, but the Commonwealth

Court correctly distinguished *Coulter* insofar as it focused on whether the disputed documents were presumptively public, and not the applicability of a privilege created by the regulation. Coulter conceded that Parole Board records were **generally** "exempt from disclosure" under the RTKL "because they were not public records." *Coulter*, 48 A.3d at 517, 519.[24] He argued unsuccessfully that the Parole Board was nonetheless barred from invoking Section 61.2 to prevent disclosure under an estoppel theory because the Parole Board had already disclosed the disputed documents to third parties. *Id.* at 519.[25]

The RTKL "is the statute providing for access to **public** records in Pennsylvania." *Bowling v. Off. of Open Records*, 75 A.3d 453, 455 (Pa. 2013) (emphasis added). Under the modern version of the RTKL in effect since 2009, "agency records are presumed to be public records, accessible for inspection and copying by anyone requesting them, and must be made available to a requester unless they fall within specific, enumerated exceptions or are privileged." *Id.* at 457. However, while privileged materials are not available through the RTKL, the applicability of a privilege was not the basis for rejecting the RTKL request in *Coulter*. Instead, an exception applied for a "record of an agency relating to a noncriminal investigation[.]" *Coulter*, 48 A.3d at 519 (quoting 65 P.S. § 67.708(b)(17)). Whether a privilege applied was not dispositive in *Coulter*.

The lower court also considered *Jones* and *Vu*. *Coulter* followed closely on the heels of *Jones* but did not cite that decision. Like *Coulter*, *Jones* discussed Section 61.2 as evidence that Parole Board records are confidential, but not in terms of any privilege created. The *Jones* Court rejected the claim that parolees and would-be parolees must

---

[24] The court observed that the records did not fall under the general rule that a "record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record" because an exception applied. *Coulter*, 48 A.3d at 519 (quoting 65 Pa.C.S. § 67.305(a)).

[25] The *Coulter* court reasoned that even if third party disclosure occurred (a fact the Parole Board disputed), the records remained confidential. *Coulter*, 48 A.3d at 519.

be treated differently under Section 61.2 for purposes of determining whether disclosure under the RTKL is permitted, and the court concluded that they are not to be treated differently. *Jones*, 993 A.2d 339, 343 ("In promulgating Section 61.2, the Board ensures the confidentiality of materials it gathers in fulfilling its role of evaluating existing parolees and those seeking parole as well."). Indeed, an open-records officer in *Jones* had initially determined in the alternative that the records were not disclosable under the RTKL because they were privileged pursuant to Section 61.2. On appeal before the OOR, that issue was deemed moot, and the Parole Board did not pursue it in its brief to the Commonwealth Court in *Jones*. *See Jones*, 993 A.2d at 341 n.4.

Likewise, in *Vu*, Section 61.2 was discussed solely in the context of whether Parole Board records are confidential (and therefore not public) for purposes of the RTKL. The *Vu* court actually cited the provision of the RTKL that prohibits disclosure of privileged records, *see Vu*, 200 A.3d 633 (citing 65 Pa.C.S. § 67.305(a)(2)), but it did not rely on that provision in determining that the Parole Board records at issue in that case were not available to a parolee through the RTKL, applying *Jones* to hold that they were excepted from the public records presumption because they are deemed confidential under Section 61.2, *id.*

Of course, *Coulter*, *Jones*, and *Vu* are not binding decisions on this Court. But they do tend to show that the Commonwealth Court has never relied on Section 61.2's ostensible creation of a privilege to deny a would-be parolee access to Parole Board records. Moreover, this Court has never cited Section 61.2 for any reason. Thus, we are confident in our conclusion that the Section 61.2 privilege has never been recognized by the judiciary. We also observe that there is no constitutional provision that suggests that agencies created by the General Assembly possess a privilege as defined in Section 61.2.

Despite sporadic citations to decisions discussing the deliberative process privilege, the Parole Board maintains in this appeal that the at-issue privilege was "created" by Section 61.2, as reflected in the question presented for our review. The Board never asks this Court to recognize the applicability of a deliberative process privilege to its decisions to grant or deny parole, and Section 61.2 cannot independently create one. Consequently, the question of whether a common law deliberative process privilege or any other established privilege applies to any or all of the documents held by the Parole Board is not before us today. As this Court has firmly established, a party claiming a privilege has the affirmative burden to prove its applicability. *BouSamra,* 210 A.3d at 975. Because we conclude that Section 61.2 does not create any privilege, the Parole Board cannot meet that burden.

## Conclusion

For the reasons set forth above, we hold that Section 61.2 does not create an evidentiary privilege. Because there is no evidentiary privilege created by Section 61.2, it matters not to whom the non-existent privilege applies. Thus, we affirm the order of the lower court, albeit based upon a different rationale.

Chief Justice Todd and Justices Dougherty, Wecht, Mundy, Brobson and McCaffery join the opinion.